

Uni. d States District Court
S    fi  it Di: t    of Texas
F    L E

NOV 1 3 2001

Lor had to Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 01-10578 |
| | § | Chapter 11 |
| FEDERAL-MOGUL GLOBAL, INC., | § | (Pending in the United States |
| | § | Bankruptcy Court for the |
| DEBTOR | § | District of Delaware) |

-----------------------------------------------------------------------------------------

| | | |
|---|---|---|
| ADAN R. GARZA and GUADALUPE | § | |
| GARZA; MANUEL C. HERNANDEZ | § | |
| and NINFA T. HERNANDEZ | § | |
| PLAINTIFFS, | § | |
| | § | |
| VS. | § | C.A. B-01-179 |
| | § | |
| ABLE SUPPLY COMPANY, ET AL. | § | |

## REPLY OF GARLOCK INC
## TO PLAINTIFFS' RESPONSE IN OPPOSITION TO
## EMERGENCY MOTION TO TRANSFER
## CIVIL ACTION PURSUANT TO 28 U.S.C. SECTION 157(b)(5)

Garlock Inc (Removing Defendant) files this Reply to Plaintiffs' Response to
Garlock's Motion to Transfer Civil Action Pursuant to 28 U.S.C. § 157(b)(5), as follows:

## I.
## PRELIMINARY STATEMENT REGARDING PLAINTIFFS' RESPONSE

1.     Garlock's Transfer Motion is based solely on a statue that reserves to a
specific District Court the determination of where this Removed case will be tried.

> The district court shall order that personal injury, tort and wrongful death
> claims shall be tried in the district court in which the bankruptcy case is
> pending, or the district court in the district in which the claim arose, *as
> determined by the district court in which the bankruptcy case is
> pending.* 28 U.S.C. § 157(b)(5)(Emphasis added).

Consideration of the related Plaintiffs' Motions (for remand, abstention, severance, all
being a determination of the "venue" of this case) is not yet ripe or appropriate for
consideration by this District Court and should be denied or abated without prejudice.
***Baumgart v. Fairchild Aircraft Corp.,*** 981 F.2d 824, (5th Cir.(Tex.) 1993) addresses

---

the issue and application of 28 U.S.C. § 157(b)(5) and the "supremacy" of this venue

determination in the "Home" District Court:

> The Fourth Circuit had "no difficulty" in finding that the district court in which the bankruptcy was pending had authority under §157(b)(5) to fix venue of personal injury tort actions against the debtor regardless of the district in which the controversy was pending.  In reconciling §1412 with §157(b)(5) the Court wrote that as to a special group of cases, "to wit, personal injury tort claims against a debtor in Chapter 11 proceedings wherever pending," §157(b)(5) is "supreme."  *Id.* at 832.

2.      Preservation of this right is particularly important where the suggestion to

remand the Removed Case to State Court may in fact destroy jurisdiction of the "Home"

District to make such 28 U.S.C. § 157(b)(5) determinations. (See, *Browning vs. Navarro*,

743 F.2d 1069, 1083 (5th Cir. 1984).[1]  Each party's "claim" in this removed case,

whether asserted by or against the Debtor, and including the contribution and indemnity

claims, arises exclusively from a[2] "personal injury, tort (or) wrongful death claim"

expressly covered by § 157(b)(5).   To pre-empt such statute as Plaintiffs suggest, in

favor of an emergency remand where no emergency has been shown, is not justified.

## II.
## SPECIFIC REPLY TO PLAINTIFFS' RESPONSE

**A.      This Court Has Subject Matter Jurisdiction Over the Debtor and Non-Debtor Personal Injury and Contribution Claims:**

3.      Plaintiffs suggest that this Court does not have subject matter jurisdiction.

Plaintiffs are wrong.   Jurisdiction of this District Court is determined at the time of

---

[1] As recognized in *Browning v. Navarro*:
> "It is axiomatic that remanding a case to state court terminates the jurisdiction of a federal bankruptcy or district court over that case. *(citations omitted)*  14 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction 3739 (1976 & Supp.1983);  . . .   Even a federal court, persuaded that it has issued an erroneous remand order, cannot vacate the order once entered.  *In re La Providencia Development Corp., 406 F.2d 251 (1st Cir.1969)*."   743 F.2d 1069, 1083 (5th Cir. 1984).

[2] *Freeport-McMoRan, Inc.  v.  K  N  Energy,  Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 859, 112 L.Ed.2d 951 (1991). *See also Celotex  Corp.,* 124 F.3d at 626; *In Re Canion*, 196 F.3d 579 (5th Cir. 1999). [*See, infra* arguments and additional authorities].

removal. See, *Texas Beef Group v. Winfrey,* 201 F.3d 680, 686 (5th Cir. 2000).[3]   Prior to Plaintiffs' dismissal of the Debtor with prejudice, practically every party to this Removed Civil Action had asserted a claim (or had the right to) against the Debtor which arises out of the same common nucleus of operative facts:

(i).   Plaintiffs had asserted a claim against the Debtor in the state court action and had standing to pursue a proof of claim and jury trial in the District Court [28 U.S.C. § 157(b)(5) and 1411) ; and

(ii).   In order to liquidate each such cross action, there must be a trial adjudicating Plaintiffs' wrongful death and personal injury claims against the Debtor.   The trial is governed by § 157(b)(5).   Once the claim is liquidated, the non-settling, non-Debtor Defendant can file a proof of claim in the Debtor's Chapter 11 case.   Each party filing a proof of claim may be entitled to a jury trial on its proof of claim.

(iii).   The Debtor is in much the same position.   It has cross-claims for contribution or indemnification against each Co-Defendant which must be liquidated in a trial and determination of Plaintiffs' wrongful death and personal injury claims against the Debtor.   The trial and determination of Plaintiffs' claims against the Debtor are likewise governed by 28 U.S.C. § 157(b)(5) and must occur in a bankruptcy related or controlled proceeding, as "property of the estate".

4.   Plaintiffs admit in ¶ 1. at page 2 of their Response that at the time of removal a debtor is ". . . one of the Defendants in the case . . . " and acknowledge that " . . . a defendant in the case filed a petition for reorganization pursuant to chapter 11 . . . .".

---

[3] *Freeport-McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 859, 112 L.Ed.2d 951 (1991).   *See also Celotex Corp.,* 124 F.3d at 626; *In Re Canion,* 196 F.3d 579 (5th Cir. 1999). [*See,*

---

[4] Subject matter jurisdiction attaches. *See **Wood v. Wood*** (In re Wood), 825 F.2d 90, 93 (5th Cir. 1987) [related matter jurisdiction exists if the action has "any conceivable effect" on the estate].[5]

5.     Most recently the Fifth Circuit Court of Appeals specifically addressed "related-to" jurisdiction over non-debtor contribution/subrogation claims and the retroactive effect of later events or outcomes on jurisdiction. As discussed, the *Canion* court held that an event which occurs after jurisdiction attaches and does not deprive the court of jurisdiction. ***In Re Canion***, 196 F.3d 579 (5th Cir. 1999) dealt with non-debtor contribution and subrogation rights against a *non-party Debtor*, as distinguished from the instant case in which Garlock has claims against a party-Debtor. Canion, a creditor of the debtor, brought a suit only against certain named non-debtors, alleging that they had conspired to interfere with R&B's efforts to collect on its judgment. The suit was referred to the bankruptcy court by the district court. Under certain conditions, these non-Debtor Defendants would have contribution, indemnity or subrogation rights against the Debtor if Canion were eventually to prevail in his suit against them. Canion lost and thereafter objected to the Bankruptcy Court's "subject matter jurisdiction." The Fifth Circuit first noted that jurisdiction may never be by consent, or waived, and proceeded to determine whether the bankruptcy jurisdiction extended to these non-debtor claims:

---

*infra* arguments and additional authorities].

[4] Removing Defendant filed the Application and Notice of Removal ("Removal Petition") pursuant to 28 U.S.C. § 1452 under the bankruptcy case proceeding styled *In re **Federal-Mogul Global, Inc***. ("Federal Mogul") which is the Bankruptcy Court mandated style that must be used for the administratively consolidated proceedings of approximately 100 Chapter 11 debtors now pending under the *In re Federal Mogul* case style in the District Court of Delaware. However, specifically named in the Removal Petition is the party-Debtor as Gasket Holdings, Inc. Attached hereto as Tab "4" and incorporated herein by reference is the consolidation order entered in *In Re Federal Mogul* specifying the other Debtor-entities which are administratively consolidated under the heading and docket number of *In re Federal Mogul* (Tab "4" omits unrelated pages dealing with numerous other affiliated debtors not parties to this suit).

---

"... legal subrogation--like all equitable remedies--is sometimes denied to litigants who come to court with unclean hands. [FN25-omitted] To prevail against the defendants, R&B would have to prove that they engaged in intentionally tortious or fraudulent conduct--exactly the type of conduct that has led Texas courts to deny a remedy lying in equity, including legal subrogation. *Id*. at 585-86

. . . .

*Assuming that R&B should successfully collect from the defendants the judgment it holds against Canion, and assuming that the defendants' fraudulent conduct would preclude legal subrogation, the total amounts due on claims against Canion's bankruptcy estate would be decreased.* This decrease would inure to the benefit of all other unsecured creditors, each of whom would then share in the disbursement that would otherwise have been paid to R&B. Id. at 586. [Emphasis added]

. . .

Courts in other circuits that have faced this question have held that a claim between two non-debtors that will potentially reduce the bankruptcy estate's liabilities produces an effect on the estate sufficient to confer "related to" jurisdiction. [FN28][6] *We note that at the time that the district court referred this proceeding to the bankruptcy court,* [FN29] the sequence of events that would reduce the claims against Canion's bankruptcy estate was not certain to occur; however, *the law is well established in this Circuit, as in others, that, when testing "related to" jurisdiction, an effect is not required to a certainty.* Rather, jurisdiction will attach on a finding of any conceivable effect. [FN30][7] " Id. at 586-87. [Emphasis Added.]

---

[5] Subject matter jurisdiction is expressly conferred on the District Court acting in its bankruptcy jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334, *et. seq.*

[6] FN28.

See Owens Illinois, Inc. v. Rapid American Corp (In re Celotex Corp.), 124 F.3d 619, 626 (4th Cir.1997) (finding "related to" jurisdiction when a creditor's claim against a non-debtor would reduce its claim in bankruptcy); Kaonohi Ohana, Ltd. v. Sutherland, 873 F.2d 1302, 1306-07 (9th Cir.1989) (upholding "related to" jurisdiction over third- party action as specific performance remedy in third-party action would reduce damages in breach of contract claim against bankruptcy estate); National Union Fire Ins. Co. v. Titan Energy, Inc., 837 F.2d 325, 329 (8th Cir.1988) (holding that a coverage dispute between the debtor's insurance company and a creditor was "related to" the bankruptcy as a finding of coverage would reduce the claims against the estate); Carr v. Michigan Real Estate Ins. Trust (In re Michigan Real Estate Trust), 87 B.R. 447 (E.D.Mich.1988). Id. at 587

[7] FN30.

See In re Wood, 825 F.2d at 94 ("Although we acknowledge the possibility that this suit may ultimately have no effect on the bankruptcy, we cannot conclude, on the facts before us, that it will have no conceivable effect.") (emphasis in original); Copelin v. Spirco, Inc., 182 F.3d 174 (3d Cir.1999) ("[T]he key word is 'conceivable'. Certainty, or even likelihood [of effect on the estate being administered in bankruptcy] is not a requirement." (internal quotation marks and citation omitted; alteration in original)); In re Titan Energy, 837 F.2d at 325, 330 (8th Cir.1988) ("[E]ven a proceeding which portends a mere contingent to tangential effect on a debtor's estate meets the broad jurisdictional test [for 'related to' jurisdiction].''); 1 Lawrence P. King, COLLIER ON BANKRUPTCY 3.01[4][c] at 3-26 (15th ed. 1998) (" '[A]utomatic' liability of the estate is not the sine qua non for related to

---

Claims for indemnification and contribution ". . . obviously would affect the size of the estate and the length of time the bankruptcy proceedings would be pending,[8] as well as (the Debtor's) ability to resolve its liabilities and proceed with reorganization."[9] *In re Baldwin-United Corp.,* 48 B.R. 901, 903 (Bankr. S.D. Ohio, 1985) [cited in *MacArthur v. Johns-Manville[10]* 837 F.2d 89 (2nd Cir.), cert. denied, 488 U.S. 868 (1988) with approval] recognizes that:

> "'the mere filing of a third-party suit for indemnity and contribution affects the assets of these Debtors, since such suits must inevitably add to the administrative costs of the estates with a concomitant decrease in proceeds available for distribution to creditors." Id. at 689.

6.     *Canion* illustrates that because even more tenuous circumstances invoke jurisdiction, the maneuvering of Plaintiffs (i.e., here seeking to drop all claims against a debtor) is not determinative of the Court's jurisdiction nor the impact on the estate.

> "We find that *at the time the district court referred the case to the bankruptcy court* (which is the time its jurisdiction is tested), [See, below, footnote 29] the outcome of this proceeding could have affected Canion's bankruptcy estate.   We conclude, therefore, that the test for "related to" jurisdiction has been met." *Id.* at 587.
> . . . .

---

jurisdiction; all that is necessary is that there could 'conceivably' be some effect upon the estate as a consequence of the litigation in question.").

[8] See also, *A.H. Robins Co. v. Piocc*, 788 F.2d 1994, 1000-10001 (4th Cir.), cert. denied, 479 U.S. 876 (1986) (adverse judgment against party indemnified by Debtor would preclude Debtor from litigating merits of claim); *see also Kossman v. TJX Companies, Inc.*, 136 Bankr. Rptr. 640, 642 (W.D. Pa. 1991) (where debtor indemnification exists, a judgment for the plaintiff would have an effect on the bankruptcy estate, "as some part of the estate would be susceptible to being diverted to meet the indemnity obligation"); *Apex Investment Assocs., Inc. v. TJX Companies, Inc.*, 121 Bankr. Rptr. 522, 526-27 (N.D. Ill. 1990) (because of existence of debtor's indemnification, "[t]he resolution of this case will affect the arrangement of the creditors, and alter the debtor's rights and liabilities with respect to the claims against the estate"); Philippe v. Shape, Inc., 103 Bankr. Rptr. 355, 358 (D. Me. 1989) (where indemnification exists, "a judgment in favor of the plaintiff . . . would automatically result in indemnification liability on the part of [the debtor]"); *In re Brentano's*, 27 Bankr. Rptr. 90, 91 -92 (Bankr. S.D. N.Y. 1983) (a judgment in favor of the plaintiff would automatically result in liability against the indemnitor-debtor).

[9] See, *In re Dow Corning*, 183 F.3d 129 (6th Cir. 1996).

[10] *Johns-Manville* cited the Fifth Circuit as authority to support its holding, quoting *In re All Media Properties, Inc.* 5 B.R. 126 (Bankr. S.D. Tex. 1980*), aff'd* 646 F.2d 193 (5th Cir. 1981):

"'claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrences or happening of an extrinsic event.'" *Id.* at 688.

---

FN29. *Federal subject matter jurisdiction is tested when the jurisdiction of the federal court is invoked.* See Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 111 S.Ct. 858, 112 L.Ed.2d 951 (1991); St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). *Generally, subsequent changes will not divest jurisdiction. Id. . . .* It was appropriate to test the district court's jurisdiction when the claim was brought, and the bankruptcy court's jurisdiction at the time of the reference. *See Continental National Bank of Miami v. Sanchez (In re Toledo), 170 F.3d 1340, 1346 n. 8 (11th Cir.1999)* ("The presence or absence of jurisdiction must be evaluated based on the state of affairs existing at the time the adversary complaint was filed ... *not at some later time when, for example, it was ultimately determined here that the Estate had no interest in the [matter].");* (citations omitted)

See also *In re Celotex Corp.,* 124 F.3d at 619 (4th Cir. 1997) (. . . we note that if "related to jurisdiction" actually existed at the time of Rapid's removal of the Contribution Action to the district Court, Rapid's global settlement with the Celotex bankruptcy estate and the treatment of Owens' claim under the Confirmed Plan could not divest the district court of that subject matter jurisdiction.).[11]   [As noted below, dismissing with prejudice against the Debtor does not dismiss the cross-actions.]

7.      Jurisdiction is far less remote in this case.  As noted in *In re Jeffers*, 2001 WL 96401 (E.D.La., Feb 02, 2001) , the District Court applied the Canion standard in a case closer to the instant case -- i.e., where the Debtor was a party to the suit:

"(citing)., *In re Canion, 196 F.3d 579, 586* (5 th Cir.1999) ("Courts in other circuits that have faced this question have held that a claim between two non-debtors that will potentially reduce the bankruptcy estate's liabilities produces an effect on the estate sufficient to confer 'related to' jurisdiction.") (citations omitted). *However, where a party seeks to recover money from a debtor directly, "related to" jurisdiction is clearly implicated. See,* e.g., Insure One Independent Insurance Agency, Inc. v. Koestner, 198 B.R. 709, 711 n. 1 (N.D.Ill.1996) (" 'Related to' jurisdiction primarily is intended to encompass *tort, contract, and other legal claims by and against the debtor,* claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into

---

[11] As established above, if "related to" jurisdiction existed at the time that the underlying action was commenced, subsequent events cannot divest the federal court of subject matter jurisdiction. *Freeport-McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 859, 112 L.Ed.2d 951 (1991).

bankruptcy court so that all claims by and against the debtor can be determined in the same forum.") (citing *Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159, 161* (7 th Cir.1994)). *Id.* at *3. [Emphasis added.]

*At the time of removal,* each party to this Removed Civil Action asserted a claim against the Debtor, all of which arose out of the same common nucleus of operative facts as the Plaintiffs' claims against the Debtor.

8. The Circuit Courts all agree that in mass tort cases subject matter jurisdiction exists over non-debtor co-defendants. Recently in *In re Dow Corning Corp.,* 86 F.3d 482, 486 (6th Cir.1996), cert. denied, --- U.S. ---, 117 S.Ct. 718, 136 L.Ed.2d 636 (1997),[12] the relationship between co-defendant claims and jurisdiction was analyzed:

"The first issue to be resolved is whether the district court has subject matter jurisdiction over breast implant claims pending not only against the debtor, Dow Corning, but also over certain claims pending against the *non-debtor defendants. Id.* at 488. [Emphasis added].
. . . .
. . . Congressional intent was "to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards, 514 U.S. 300, ----, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995)* (citations omitted).
. . . .
We believe two of these theories support a finding that the district court has "related to" jurisdiction over the claims at issue, and address them in turn.

**1. Claims for Contribution and Indemnification . . . .** Relying on *Pacor, Inc. v. Higgins, 743 F2d 984, 999 (3rd Cir.1984),* the district court rejected this basis for "related to" jurisdiction and held that the possibility of contribution or indemnification should only be regarded as relevant if and when judgments are actually entered against the nondebtors. *Id.* at 490.

---

[12] Citing potential claims for contribution against Dow Corning, the non-debtor manufacturers--Baxter, 3M, Bristol-Myers, and MEC moved to transfer the claims in which they were named as co-defendants with Dow Corning. Chapter 11 debtor-silicone breast implant manufacturer in various jurisdictions by claimants who did not join a global settlement pool to Eastern District of Michigan. The district court granted Dow Corning's motion to transfer, but denied, on jurisdictional grounds, the motion as it related to the non-debtor manufacturers. In *In re Dow Corning Corp.*, 86 F.3d at 482, the Sixth Circuit Court reversed and held that the Eastern District of Michigan had "related to" jurisdiction over breast-implant claims against not only the debtor, Dow Corning, but also other non-debtor defendants contribution claims.

---

. . . .

Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on "the debtor's rights, liabilities, options, or freedom of action" or the "handling and administration of the bankrupt estate." *In re Marcus Hook Dev. Park Inc.*, 943 F.2d 261, 264 (3d Cir.1991) (citation omitted). *Id.* at 491

. . . .

Based on the principles outlined above, we believe the district court has "related to" subject matter jurisdiction *over the breast implant claims pending against the nondebtor defendants* in this case. *Id.* at 493. [Emphasis added.]

The Sixth Circuit reversed and remanded back to the district court to consider the "related to" jurisdiction over the non-debtor co-defendant contribution claims.

## B. Plaintiffs' Citations To Venue Authorities Are Incorrect and Irrelevant:

9.     Removing Defendant admits ¶ 5 of Plaintiffs response that this Honorable District Court has jurisdiction to determine its jurisdiction. *See Ceres Gulf v. Cooper*, 957 F.2d 1199, 1207 n. 16 (5th Cir. 1992).[13] Likewise Garlock agrees that subject matter jurisdiction is a threshold determination. *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 101, 118 S.Ct. 1003, 1016 (1997).[14] However, after simply reciting the two agreed jurisdictional propositions above, Plaintiffs next embark on citation to authority and a description of law that has no relation to the instant case.   In

---

[13] Federal Rules of Bankruptcy Procedure 7012(b) [Federal Rules of Civil Procedure 12(h)(3)"]. *See, also U.S. v. United Mine Workers of America*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947);   *Durfee v. Duke*, 375 U.S. 106 (1963);   *In re Baldwin-United Corp. Litigation*, 765 F.2d 343, 347 (2d Cir.1985)

[14] The limitation of both the trial and appellate courts' ability to act on the merits of a case when no jurisdiction exists was recently emphasized by the United States Supreme Court in *Arizonans for Official English v. Arizona*, 520 U.S. 43, 73, 117 S.Ct. 1055, 1071-1072, 137 L.Ed. 2d 170 (1997), *quoting from Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501, 541, 106 S.Ct. 1326, 1331, 89 L.Ed. 2d 501(1986):

> Every appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it.  And if the record discloses that the parties were without jurisdiction this court will notice the defect, although the parties make no contention concerning it. [When the lower federal court lack[s] jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.

*Id. (internal citations omitted).* [Emphasis added.]

---

REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION                                    PAGE 9

fact, no case authority supports a lack of subject matter jurisdiction or a reason to blatantly ignore § 157(b)(5).

10.     Plaintiffs cite only two cases to support their arguments.  The first, *Wall v. Merrill Lynch,* 1992 WL 77625, *2 (S.D. N.Y. March 26, 1992), a securities fraud case, deals only with venue under 28 U.S.C. §1404(a) and has nothing to do with the specialized personal injury venue provisions of § 157(b)(5).  The general venue statutes are inapplicable to the special venue statute §157(b)(5). *Baumgart, supra.  Baumgart* recognizes the distinction between the general venue statute  (*i.e. In re Burley,* 738 F.2d 981, 988 (9th Cir. 1984); *Kotlicky v. Belford,* 64 Bankr. Rptr. 689, 681 (N.D. Ill. 1986) (a strong presumption exists favoring transfer to the home court) and the special venue provision of § 157(b)(5).  As *Wall* appropriately points out, the general venue statute determination is made by the District Court *where the case is pending* (because it is a non-personal injury case and not governed by the special venue statute). *Wall* never mentions § 157(b)(5).  The two general venue statutes addressed in *Wall* have nothing to do with the § 157(b)(5) "Home" District Court mandate to analyze what effect the continuing litigation of "personal injury or wrongful death" claims against the debtor or non-debtor co-defendants could conceivably have on the debtor's bankruptcy estate.  Not only does the specific venue statute [§ 157(b)(5)] control over the general venue statutes, but as the Court recognizes these two venue provisions do not conflict at all:[15]

---

[15] Section 157(b)(5) was drafted to cover the procedure in connection with a special group of cases, to wit, personal injury tort claims against a debtor in Chapter 11 proceedings wherever pending and in that connection the section is supreme.  In all other cases related to the bankruptcy proceedings, however, the general statute (i.e., section 1412) would govern.  This, we think, is the proper construction to be given the two statutes.  It is a construction which harmonizes the two sections.  It conforms to that established canon of statutory construction that "[w]e must read the statutes [in those instances where there is any possible conflict] to give effect to each if we can do so while preserving their sense and purpose."  *Watt v. Alaska,* 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981). . . ." *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994 (4th Cir.1986).

---

> Section 157(b)(5) was drafted to cover the procedure in connection with a special group of cases, to wit, personal injury tort claims against a debtor in Chapter 11 proceedings wherever pending *and in that connection the section is supreme*. In all other cases related to the bankruptcy proceedings, however, the general statute (i.e., section 1412) would govern. This, we think, is the proper construction to be given the two statutes. It is a construction which harmonizes the two sections. . . .  To accept the appellants' interpretation and to negate the plain language of 157(b)(5) "would violate the basic principle of construction that statutes should be read, if possible, as harmonious texts." *Leaf Tobacco Exporters Assn. v. Block*, 749 F.2d 1106, 1115 (4th Cir.1984)." *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.1986).

*Wall* is academically accurate but completely useless to an analysis of the facts or law of this case and 28 U.S.C. § 157(b)(5).

11.    The second case cited by Plaintiffs is *NI Fuel Company, Inc. v. Steven E. Jackson*, 257 B.R. 600 (N.D. Okla 2000).   Plaintiffs thoroughly discuss *NI Fuel* ignoring again that it only deals with the general venue statutes rather than "personal injury" claims or the § 157(b)(5) specific venue statute.   Plaintiffs again create this straw man so that they can knock it down, only because they cannot respond to the long list of Circuit Court and District Court authorities that recognize the "super-venue" provisions of 28 U.S.C. § 157(b)(5) unique to personal injury claims only determined in the "Home" District Court, and clear subject matter jurisdiction of co-defendant contribution claims. *NI Fuel* is another investment fraud case, having no personal injury issues at all, and containing no mention of § 157(b)(5) venue transfer whatsoever. *NI Fuel* held that *the general venue statute*, [ 28 U.S.C.A. §§ 1404(a), 1412] rather than the *"bankruptcy venue" statute,* [28 U.S.C.A. § 1412] applied to the "related to" proceeding and had no issues, discussion, reference, footnote, or even *dicta* involving the application of the specialized venue transfer provisions of § 157(b)(5).   As such, it is completely irrelevant.

---

REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION                                    PAGE 11

**C.      Plaintiffs' Dismissal With Prejudice of the Debtor Does Not Dismiss or Impair Garlock's Pending Cross-Action against the Debtor:**

12.      Plaintiffs' tactic of (post-removal), dismissal of the Debtor does not deprive this Court of jurisdiction for another reason.   Such a dismissal does not render Garlock's (and the other Defendants') cross-actions against the Debtor null and void.   Garlock and several other Co-Defendants still have viable cross-claims for contribution against the Debtor, regardless of Plaintiffs' nonsuit.  Plaintiffs simply misstated the Texas law.   Under Texas personal injury law, the contribution rights of parties are *statutory*, codified in Chapter 33, Tex. Civ. Prac. & Rem. Code.   In pertinent part, § 33.016(a) & (b) identify contribution defendants and define contribution rights as follows:

> "      (a) In this section, "contribution defendant" means any defendant, counter-defendant or third party defendant . . . from whom any party seeks contribution with respect to any portion of damages for which that party may be liable, *but from whom the claimant seeks no relief at the time of submission.*"
>         (b)      "Each liable defendant is entitled to contribution from each person who is not a settling person who is liable to the claimant for a percentage of responsibility *but from whom the claimant seeks no relief at the time of submission.*   A party may assert the contribution right against any such person as a contribution defendant in the claimants action."   *Id*. [Emphasis added.]

Clearly, the claimant's pursuit of an action against a defendant is not a prerequisite to a valid cross action for contribution by another defendant.   In accordance with the Texas Civil Practice & Remedies Code, the trier of fact will assess the liability for cross-actions of the Debtor in favor of Garlock, or *vice versa* upon trial of the case even where the Debtor is not being sued by Plaintiffs.   The co-Defendants' cause of action for contribution does not disappear by dismissal with or without prejudice by the Plaintiffs of the Debtor.   And, that contribution claim cannot be liquidated without liquidation of the personal injury tort or wrongful death claim such that the Debtor's, Garlock's, or the

---

other co-Defendants' liability is fixed and contribution assessed. [See, Arguments and Authorities, Response to Plaintiffs' Motion to Sever].

13.    Plaintiffs claim *C& H Nationwide, Inc. vs. Thompson, et. al.,* 903 S.W.2d 315 (1994) claiming that it stands for the proposition that if the Defendant is not (or is no longer) liable to the Plaintiff as a result of a dismissal with prejudice by the Plaintiff of its claims against that Defendant, then no other co-defendant may seek contribution through its then pending cross-actions against that dismissed defendant. In fact the Texas Supreme Court in *C&H* makes the following contrary observation:

> "None of the parties have (sic) raised an issue of the effect of § 33.016 on our analysis, and we intimate no view on that subject." *Id*. at 322, note 6.

Had the Supreme Court's opinion in *C&H* stood for the proposition announced by Plaintiffs, it would have effectively re-written § 33.016 Tex. Civ. Pract. & Rem Code. It did not.[16]

14.    The Texas Rule regarding filing cross-claims, Tex. R. Civ. P. 97(e)[17] is very similar to the corresponding Federal Rule. *See* Fed. R. Civ. P. 13(g). Both sets of rules provide that a cross-claim is permitted only against a co-party. A co-party is defined as that person having like status, such as co-defendants. *Schwab v. Erie Lackawanna*

---

[16] However, even a superficial reading of the procedural facts of *C & H Nationwide* fails to reveal any procedural swordplay such as that in the present matter: no plaintiff dismissed any claims and, further, there are no cross-claims asserted among any co-defendants in *C & H Nationwide*. Further, the Texas Supreme Court in *C & H Nationwide* does not cite any --- not a single one --- of the recognized handful of federal cases concerning the viability of a defendant's cross-action against a co-defendant when the plaintiff nonsuits: neither *Frommeyer*, nor *Picou*, nor *Fairview Park*, nor *Aetna*, nor *Slotkin*, nor *Barker*, nor *Hecht* (infra). Finally, neither Fed. R. Civ. P. 13(g) nor Tex. R. Civ. P. 97(e), each referring to cross-claims, is mentioned once in the case. And one would surely suppose that the leading case, as Plaintiffs claim *C & H Nationwide* to be --- might possibly refer to the Texas rule on dismissals, at least once. Yet *C & H Nationwide* fails to refer at any time to Tex. R. Civ. P. 162, which is entitled "Dismissal or Non-suit." *C& H Nationwide* fails to make any reference anywhere in its pages to either any Texas case, or any federal case, or any procedural rule, state or federal, on the issue it purports to serve as precedent.

[17] Rule 97(e) of the Texas Rules of Civil Procedure reads in its entirety as follows:
*Cross-Claim Against Co-Party*. A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

---

*Railroad Co.,* 438 F.2d 62, 65-66 (3rd Cir. 1971). Where a cross-claim was filed against one who was a co-party, and where the underlying claim was dismissed, the dismissal of the underlying claim *does not operate as a dismissal of the cross-claim filed against a defendant by a co-defendant.* ***Frommeyer v. L & R Construction Co., Inc.,*** 139 F. Supp. 579 (D.N.J. 1956); ***Picou v. Rimrock Tidelands***, 29 F.R.D. 188 (E.D. La. 1962); *see* ***Fairview Park Excavating Co. v. Al Monzo Construction Co.***, 560 F.2d 1122 (3rd Cir. 1977); ***Aetna Insurance Co. v. Newton,*** 398 F.2d 729 (3rd Cir. 1968, ); ***Slotkin v. Brookdale Hospital Center***, 377 F. Supp. 275 (S.D.N.Y. 1974); ***Barker v. Louisiana & Arkansas Railway Co.,*** 57 F.R.D. 489 (W.D. La. 1972); ***Hecht Co. v. District of Columbia,*** 139 A.2d 857 (Munic. D.C. App. 1958); *see generally* ***6 Wright & A. Miller,*** Federal Practice and Procedure, Civil, ¶ 1431 (1990).

15.     Texas precedent illustrates the principle of the immediately foregoing cases, i.e., that a dismissal of Plaintiffs' claims against a co-defendant does not operate to extinguish a defendant's right to assert an action against the co-defendant. ***Ramon v. Mani,*** 550 S.W.2d 270 (Tex. 1977)  is an early case affirming Texas' rejection (in ***Sparger v. Worley Hospital, Inc.,*** 547 S.W.2d 582 (Tex. 1977)) of the "captain of the ship" theory of liability for doctor in favor of measuring an operating surgeon's vicarious liability by the standards common to other employers. Plaintiff Ramon's nonsuit of the hospital did not affect in any way the ability of the defendant doctor to claim against his co-defendant. ***Ramon***, 550 S.W.2d at 270-2. *See, also,* unpublished opinion ***Texas v. Roberson***, 409 S.W.2d 872 (Tex. App. Tyler 1966, no writ). Plaintiffs suggestion that all claims against the Debtors be severed will result in multiple trials of the same issue.

16.     The potential result of multiplying contribution and indemnification litigation (and creating multiple, but identical, trials inviting inconsistent results) was expressly rejected in ***In re Dow Corning Corp.,*** 113 F.3d 565 (6th Cir. 1997) as

regarded non-debtor contribution or indemnification claims. The Sixth Circuit addressed

severance of the debtor out of pending contribution claims cases:

> *"We further acknowledged that the risk to the debtor's estate would be*
> *substantially enhanced "if the claims against Dow Chemical and*
> *Corning Incorporated are allowed to proceed separately" from those*
> *against Dow Corning. **Id.** at 495.* After outlining the risks to Dow
> Corning's estate, we remanded to the district court with instructions "to
> determine in each individual case whether hearing it would promote or
> impair efficient and fair adjudication of bankruptcy cases." Id. at 497
> (quoting *In re Salem Mortgage Co.*, 783 F.2d 626, 635 (6th Cir.1986))."
> [Emphasis added.]
> . . . .
> Failing to transfer the claims against the [non-debtors] will likely affect the
> size of the estate and the length of time the bankruptcy proceedings will
> be pending, as well as Dow Corning's ability to resolve its liabilities and
> proceed with reorganization. As we noted in *In re Dow Corning Corp.*, 86
> F.3d 482, 493 (6th Cir.1996), cert. denied, --- U.S. ---, 117 S.Ct. 718, 136
> L.Ed.2d 636 (1997). . . . [T]he cases against the shareholders should be
> transferred in the interest of justice. *Id.* at 571.
> . . . .
> We further find that discretionary abstention from the cases against the
> shareholders is wholly inappropriate in this case. *Id.*

The reasoning of this case authority is simple and logical -- the claims prosecution and

the impact of litigation in multiple foreign courts has a direct impact on the

administration of the Chapter 11 case. *See, also **Lindsey v. O'Brien, Tanski, Tanzer***

***and Young Health Care Providers of Connecticut (In re Dow Corning Corp.)**,* 86 F.3d

482, 494 (6th Cir.1996) ("The potential for Dow Corning's being held liable to the non-

debtors in claims for contribution and indemnification ... establish[es] a conceivable

impact on the estate in bankruptcy. Claims for indemnification and contribution ...

obviously would affect the size of the estate and the length of time the bankruptcy

proceedings will be pending, as well as Dow Corning's ability to resolve its liabilities and

proceed with reorganization.").

    17.    As further evidence of the significance of contribution claims in relation to

a pending bankruptcy case, in the ***Dow*** case the bankruptcy court (as in other mass tort

---

cases) permitted the contribution claimants to form their own official committee. *In re Dow Corning Corp.*, 194 B.R. 121, 144 (Bankr. E.D. Mich, 1996) *rev'd on other grounds* 212 B.R. 258 (E.D. Mich 1997); *See, also In re Dow Corning*, 183 F.3d 129 (6th Cir. 1996)]; *In re Dow Corning,* 244 B.R. 721, 746 (Bankr. E.D. Mich. 1999).

### D. The Automatic Stay Applies to Any Trial of These Removed Cases In Any Event

18.     Remand or abstention, in lieu of granting the Transfer Motion, does not result in immediate trial of any of these cases.  Plaintiff asserts that "[t]hese removals, Transfer Motions, and Hearing Motions interrupted litigation then in progress, disrupted the scheduling of litigation and procedures attendant to such litigation, . . ." [*See,* Plaintiffs' Response, pg. 2 & 1] as if Plaintiff were unaware that 11 U.S.C. § 362 stays all such activity in this [*See, Korn v. G.D. Searle & Co.*, 81 B.R. 1 (D.N.H. 1987) (the automatic stay precludes severance of consolidated personal injury actions against an IUD manufacturers where severance could result in nondebtor manufacturer contending that debtor manufacturer was solely liable) case other than Removal. *See, Browning v. Navarro*, 743 F.2d 1069, 1083 (5th Cir. 1984).[18]  The automatic stay is in place with respect to this removed case.  28 U.S.C. § 157(b)(5) is enacted to compliment the automatic stay and govern where these claims will be liquidated when the bankruptcy court determines to lift the stay.

### E. 28 U.S.C. § 157(b)(5) Was Enacted To Avoid The Proliferation of Litigation By Plaintiffs' Demand for Dismissals or Severances -- or Multiple Trials Resulting from Severance

19.     Garlock strongly denies that ". . . delay and obstruction of the process were Garlock's intended goals." [*See,* Plaintiffs' Response pg. 2, ¶3].  Plaintiffs past

---

[18] "A party in interest who desires to pursue his pending but stayed action may file a complaint or motion in the bankruptcy court for relief from the automatic stay to proceed with his cause, *see* 11 U.S.C. § 362(d), or either party

---

conduct is best illustrated by these Plaintiffs' attempts, post-removal, to dismiss the Debtor without prejudice in the state court, their companion Motions filed with this Court to sever the Debtors, and their last minute decision to dismiss all claims against the Debtor with prejudice, all as attempts to avoid the clear mandates of 28 U.S.C. § 157(b)(5) by arguing that the decision to dismiss actually "controls" whether the Debtor is in, or out of, this case.    It is this historical "self-help" conduct that must be regulated by the Home District Court to implement the Congressional purpose of § 157(b)(5) which Plaintiffs suggest this Honorable District Court should ignore:

> "Finally, *the manifest purpose of (28 U.S.C.) section 157(b)(5) was 'to centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'* **A.H. Robbins,** 788 F.2d at 1011 (*quoting* 130 Cong.Rec. H7492 (June 29, 1984) (remarks of Congressman Kastenmeier), reprinted in 1984 U.S.Code Cong. & Admin.News at 579). This is consistent with Congress' desire to eliminate the confusion, delay and inefficiencies associated with the Bankruptcy Act's [FN7] limited jurisdictional scheme. See H.R.Rep. No. 595, 95th Cong., 1st Sess. 43-52 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6004-13; **Pacor, Inc. v. Higgins,** 743 F.2d 984, 994 (3d Cir.1984)." *Id.*

Removing Defendants Motion to Transfer is neither new in the law nor unique to mass tort cases, although  ". . . [c]oncededly, section 157(b)(5) does not prescribe any procedure." *Id. A.H. Robbins*.    Transfer of these removed cases easily and properly places before this "Home" District Court the parties, pleadings, and issues necessary for the 157(b)(5) determination necessary to implement through § 157(b)(5) the policy considerations surrounding its enactment to assure that a reorganization is

---

to the pending action may file a motion for removal pursuant to 28 U.S.C. § 1478. (*citing*)  *See **In re Critical Fork Coal Corp.**,* 18 B.R. 422, 424 (Bankr.W.D.Va.1982)"].  *Id.* Browning at 1083.

---

"centralized,"[19] "speedy,"[20] and "efficient"[21] before the "Home" District Court, by obtaining from this District Court a remand order, right or wrong, so that jurisdiction by the Home District Court is averted. Clearly, severance and remand without input from the Home District Court is a decentralizing of the Chapter 11 process of competing claims against the Debtor and the Debtor's ability to deal with these competing claims, determinations of which are reserved to the Home District Court.

20.    Plaintiff's Response to Removing Defendants' Motion to Transfer totally ignores any discussion of § 157(b)(5). Plaintiffs hope this Court will rule on their Motion to Remand before the "Home District Court" may deal with the issues of de-centralization of this bankruptcy related litigation as a result of remand. Most remarkable to the issue of Plaintiffs' attempt to ignore §157(b)(5) and remand this case and the impact of multiplication of jury trials involving the same operative facts, and the debtor's rights with respect to co-defendants common to many of the Chapter 11 cases is astounding and only occurs if 28 U.S.C. § 157(b)(5) is ignored.

21.    Removal of these cases to the District Court was premised upon both the economic factors of the asbestos litigation industry recited in Removing Defendants Response to Plaintiffs' Motion to Transfer, and the emerging need to implement 28 U.S.C. § 157(b)(5) to "centralize" this litigation in a single court for a single trial -- a request that must be presented to and heard by the "Home" District Court. Plaintiffs' unilateral action to non-suit or sever a Debtor (without lifting of the automatic stay)

---

[19] See, also, *In re Pan American Corp.* 950 F.2d 839, 845 (2nd Cir. 1991) [dealing with multiple personal injury claims removed from state court and transferred pursuant to § 157(b)(5)]; *In re U.S. Lines, Inc.*, 216 F.3d 228, (2nd Cir.(N.Y.), 2000).

[20] *Katchen v. Landy*, 382, U.S. 323 (1966)]. *see also In re Commonwealth Oil Refining, Inc.*, 596 F.2d 1239, 1247 (5th Cir. 1979), cert. denied, 444 U.S. 1045 (1980).

[21] *Matter of National Gypsum Co.*, 118 F.3d 1056 (5th Cir 1997); *In re Butcher,* 46 BR., 109, 112 (Bankr. N.D. Ga. 1985) ("The most important factor is whether the transfer of the proceeding would promote the economic and efficient administration of the estate");

dramatically impacts what is now occurring to the District Court assuming jurisdiction over these § 157(b)(5) cases by "self-help" multiplication of jury trials involving the debtor' and the co-defendants common to most of the Chapter 11 cases. What has occurred historically by the asbestos Plaintiffs participating in these Chapter 11 cases is the immediate filing of non-suits (*ex-parte* in state court) or severance of these new-filing defendants from the state court litigation and filing of a proof of claim in the bankruptcy case entitling the Plaintiff-claimant to a jury trial of its claim.

22.     Because most of these pending Chapter 11 cases (a number of which are pending in Delaware such as *Gasket Holdings*) originated from these multi-defendant state court suits that have a number of common co-defendants, the proliferation of actual or potential jury trials is exponential.   [See, 28 U.S.C. § 157(b)(2)(B).  This impact, may be illustrated by way of example using the Chapter 11 filings that have occurred just this year:

•     **Debtor #1** (using *W.R. Grace's* Delaware Chapter 11 case filed in 2001 for example) had 300,000 pending cases (with many common co-defendants). W.R. Grace files its Chapter 11, and the plaintiffs immediately sever or non-suit Grace and file proofs of claims in Grace's bankruptcy case.  The result is 300,000 pending state court cases (less W.R. Grace) and 300,000 new proofs of claims entitling plaintiffs to a jury trial on each such proof of claim for the same injury; or 600,000 jury trials (two each on the same injury, but now to two different juries).

•     Next **Debtor #2** (using co-Defendant *U.S. Gypsum's* Chapter 11 case filed in 2001 in Delaware) and the same Plaintiffs' repeat the drill, severance and non-suit of National Gypsum.    Now there are 900,000 jury trials (3 each on the same facts and same injury, but to three different juries) arising out of the original 300,000 original lawsuits.

---

• Next **Debtor #3** (using as an example *Federal Mogul,* etc, this Debtor-Defendant). The jury trials demanded by Plaintiffs now are 1,200,000.[22]

23. The following chart illustrates how 1,200,000 jury trials have now been created out of the original 300,000 pending asbestos suits, all on the exact same common nucleus of operative facts, and solely by the "self-help" proliferation tactics of these asbestos plaintiffs.

| Asbestos Proceeding | | |
|---|---|---|
| State Court Original | 300,000.00 | Including W. R. Grace, Garlock, |
| • W. R. Grace files first | 300,000.00 | W. R. Grace now has 300,000 jury trial proofs of claims |
| •Ntl Gypsum files next | 300,000.00 | Ntl Gypsum now has 300,000 jury trial proofs of claims |
| •Gasket Holdings files next | 300,000.00 | Gasket H. now has 300,000 jury trial proofs of claims |
| Total Jury Trials | 1,200,000.00 | |

These numbers are rounded, but the results and impact upon the Federal District Court and litigants are reality.

24. The net result of this "self-help" forum shopping cannot be denied merely because 9 out of thousands of cases resulting in thousands of past claims filed in bankruptcy have proliferated the dockets of the District Courts exponentially. It is the District Courts that have been given the authority and power to re-establish single cases, single trials, and single forums to prevent what is in fact happening:

• W.R. Grace [Delaware case No. 01-01139] will liquidate the 300,000 plaintiff claims against it under 28 U.S.C. § 157(b)(5) and 28 U.S.C. §1441 which specifically preserves the right to a jury trial.

---

[22] These numbers are not intended to be represented as correct or exactly accurate and it is likely not the case that each of the pending asbestos cases, but this illustration did not even go through the multiple 2001 filings, let alone those filings that have occurred in the past several years prior to 2001. It does not make economic sense to allow such a proliferation of litigation to continue so that the Plaintiffs are able to totally clog the Federal Bankruptcy Courts' and Federal District Courts' dockets and 28 U.S.C. § 157(b)(5) is the basis by which Congress mandated the avoidance of this effect

---

REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION                    PAGE 20

- U.S Gypsum [Delaware Case No. 01-2094] or U.S. Mineral Products [Delaware case No. 01-2471] will liquidate the 300,000 exact same claims, same operative facts, but only as to U.S. Gypsum under 28 U.S.C. §157(b)(5) and 28 U.S.C. § 1441 specifically preserving the right to a jury trial.; and

- Gasket Holdings Inc [Delaware case No. 01-10578] will liquidate the 300,000 exact same claims and operative facts, but only as to Gasket Holdings pursuant to 28 U.S.C. § 157(b)(5) and 28 U.S.C. § 1441 specifically preserving the right to a jury trial.; and

- Finally, the State Court will liquidate the same 300,000 suits on the exact same operative facts after the stay is lifted to permit liquidation of the contribution claims, as to all other Defendants except  W.R. Grace, Gypsum, and Gasket Holdings -- or these claims will be handled (all 300,000) in addition to the 300,000 state court jury trials, in Delaware bankruptcy court.

25.    Remand, or severance and remand, of this case to State Court will have two  inequitable and improper results:

a.    it will continue the proliferation of jury trials of the exact same injury claim;  and

b.    take away of Removing Defendants and the "Home" District Court the right to review the above in light of the impact on the "Home" District Court already straddled with these Plaintiffs' proofs of claims requiring jury trial liquidation, and remove from the parties rights the Congressional intent to allow a single District Court to undo the de-centralization of these suits by implementing 28 U.S.C. § 157(b)(5).  To deprive Removing Defendant of the right to present these arguments and fact, particularly on an expedited basis without cause, is simply not warranted by the facts nor the tactical "forum shopping" dismissals of

---

the debtors post-removal. The Plaintiffs' demand for "equitable" remand or discretionary "equitable" abstention does not justify depriving Removing Defendants and the "Home" District Court of statutory rights and duties.

Not only is this counter-intuitive to every logical mandate of judicial economy, but totally avoidable by application of 28 U.S.C. § 157(b)(5) and the mandates of the Supreme Court and Congress to "centralize" all issues related to a bankruptcy case in a central proceeding.[23]    What Plaintiffs are doing to the tort and bankruptcy systems imposes the likelihood of multiple inconsistent results.[24]   In the example above, 4 juries will pass on the same injury and assess damages.  Which damage award will actually liquidate "contribution claims"?  Which one will be binding on the parties?  How often will 4 separate juries actually reach consistent results?  All of this confusion is avoided when the District Court employs the centralized system mandated by 28 U.S.C. § 157(b)(5).

26.    Both severance and dismissal impacting contribution claims are subject to the automatic stay just as prosecution of claims for contribution or indemnity against the

---

[23] "Finally, the manifest purpose of (28 U.S.C.) section 157(b)(5) was 'to centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.' *Piccinin*, 788 F.2d at 1011 (*quoting* 130 Cong.Rec. H7492 (June 29, 1984) (remarks of Congressman Kastenmeier), reprinted in 1984 U.S.Code Cong. & Admin.News at 579). This is consistent with Congress' desire to eliminate the confusion, delay and inefficiencies associated with the Bankruptcy Act's [FN7] limited jurisdictional scheme. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 43-52 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6004-13; *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)." *In re Pan American Corp.* 950 F.2d 839, 845 (2nd Cir. 1991) [dealing with multiple personal injury claims removed from state court and transferred pursuant to § 157(b)(5)]; *In re U.S. Lines, Inc.*, 216 F.3d 228, (2nd Cir.(N.Y.), 2000); *Zimmerman v. Continental Airlines, Inc.*, 712 F.2d 55 (3rd Cir.1983), cert. denied, 464 U.S. 1038, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984); *Matter of National Gypsum Co.*, 118 F.3d 1056 (5th Cir 1997); *In re Bailey*, 217 B.R. 523, 526 (Bkrtcy.E.D.Tex.1997) *In re Greyling Realty Corporation*, 74 F.2d 734 (C.C.A.2 (N.Y.), 1935); *In re Singer Co. N.V.*, 2001 WL 984678 (S.D.N.Y., 2001); *Trefny v. Bear Stearns Securities Corp.*, 243 B.R. 300 (S.D.Tex.,1999); *In re Greyling Realty Corporation*, 74 F.2d 734 (C.C.A.2 (N.Y.), Jan 07, 1935) *In re Coleman Enterprises, Inc.*, 266 B.R. 423 (Bankr.D.Minn. 2001); *In re Nu-Kote Holding, Inc.*, 257 B.R. 855 (Bankr.M.D.Tenn. 2000); *In re Jotan, Inc.*, 232 B.R. 503 (Bankr.M.D.Fla., Apr 12, 1999).

[24] Any time a plaintiff does not join all possible defendants alleged to be jointly and severally liable, those parties who are joined suffer the risk of an inconsistent judgment result in a subsequent action for contribution or indemnification. *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D.Ohio 1984).

---

Debtor are subject to the automatic stay generally. This would include the Debtor's rights to indemnity and contribution.

27.     If prosecution of a suit for contribution against a Debtor are stayed (which they are) it is axiomatic that the deliberate taking of an action in a case (without lifting of the stay) which has a direct or indirect impact on the contribution claims pending by or against the Debtor would be covered by the automatic stay and would be improper "self-help" if attempted. *In Re Baldwin-United Corporation Litigation,* 765 F.2d 343 (2nd Cir. 1985) addresses contribution claims against the Debtor which arose out of suits against broker-dealers who had sold annuities issued by Baldwin's insurance subsidiaries. Observing the conflict between the "Home" Court and other District Courts, *Baldwin* deferred to the stay controlled in the Home Court:

> " . . . to whatever extent a conflict may arise between the authority of the Bankruptcy Court to administer this complex reorganization and  the authority of the District Court to administer consolidated pretrial proceedings, *the equities favor maintenance of the unfettered authority of the Bankruptcy Court.*
> . . . .
> *The possibility of conflicting decisions is far more serious in (a) complex Chapter 11 proceeding with its numerous indemnity claimants . . . ."* [Emphasis added.] [*Id.* at 349]

Plaintiffs suggest that this policy consideration, enacted by Congress through § 157(b)(5) should simply be ignored. *Baldwin* disagrees:

> "[W]hether the Bankruptcy Court in Ohio or the District Court in New York ought to be the first court to determine whether the automatic stay arising from the filing of the Chapter 11 proceedings, *see* 11 U.S.C. § 362 (1982), *applies to indemnity and contribution claims* filed against Baldwin after the filing of the Chapter 11 petition but based on facts occurring prior to the filing of that petition." *Id.* at pg. 345.

28.     All of this points only to the fact that it is the Home District Court which is vested with the authority to determine how and where this case is to be tried. Consistent with such policies of "home" Bankruptcy Court jurisdiction [*Id.*] and the "home" District

---

Court jurisdiction [regarding these personal injury suits pursuant to § 157(b)(5)] and particular venue determinations unique to this Chapter 11 case, the Garlock Removed Cases should be transferred directly to this District Court, District of Delaware and Plaintiffs' Motion to Remand should be denied without prejudice.

## V.
## CONCLUSION

29.     Garlock's removal of this case to this District Court, consistent with the requirements of removal to the District Court in which the removed case was pending, and its immediate Motion to Transfer, is motivated by deliberate and honorable desire to find a solution other than Plaintiffs' road-map to Garlock's own bankruptcy.   Plaintiffs' plan assures that pending and future asbestos claimants having legitimate claims will get nothing for their injury, just as Garlock's employees will lose their jobs.   Garlock seeks only to preserve this case for the purposes of the review by the "Home" District Court pursuant to 28 U.S.C. § 157(b)(5), preserving thereby the "Home" District Court's decision to remand, abstain, sever, or keep for trial, this case.   Depriving the Removing Defendant of that right in favor of an emergency remand where no emergency has been shown is not justified

WHEREFORE, PREMISES CONSIDERED, GARLOCK INC prays that Plaintiffs' Motion to Transfer be granted and that Garlock have such other and further relief, at law or in equity to which it may show itself to be justly entitled.

Respectfully submitted,

Mitchell C. Chaney
SB# 04107500
Fed ID #1918
Eduardo Roberto Rodriguez
SB# 17144000
Fed. ID # 1944

Teri L. Danish
SB# 05375320
Fed. ID # 12862
RODRIGUEZ, COLVIN & CHANEY, LLP
1201 East Van Buren
Brownsville, Texas 78522-2155
Phone: (956) 542-7441; fax: (956) 541-2170
ATTORNEY IN CHARGE FOR GARLOCK
INC

Shelby A. Jordan
State Bar No. 11016700
Admissions No. 2195
Harlin C. Womble, Jr.
State Bar No. 21880300
Admissions No. 8959
Nathaniel Peter Holzer
State Bar No. 00793971
Admissions No. 21503
*Jordan, Hyden, Womble & Culbreth, P.C.*
500 N. Shoreline Dr., Suite 900
Corpus Christi, Texas 78471
Telephone: (361) 884-5678
Telecopier: (361) 884-5616
REMOVAL COUNSEL FOR GARLOCK INC

## CERTIFICATE OF SERVICE

I, Teri L. Danish, hereby certify that a true and correct copy of foregoing document was served by facsimile and U.S. mail on November 13th , 2001 on Peter Kraus, counsel for Plaintiffs. It is being served the same day or as soon thereafter as possible on all counsel of record, by U.S. mail.

Teri L. Danish

# Attachments To Reply of Garlock Inc.

**Tab 1**    *In re Dow Corning Corp.*, 86 F.3d 482, 486 (6th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 718, 136 L.Ed.2d 636 (1997),

**Tab 2**    *C& H Nationwide, Inc. vs. Thompson, et. al.,* 903 S.W.2d 315 (1994)

**Tab 3**    *State of Texas v. Ava Louise Roberson, et al,* 1966 Tex. App. LEXIS 2333 (Nov. 10, 1966)

**Tab 4**    Consolidation Order entered in *In Re Federal Mogul* District Court, Delaware, specifying the other Debtor-entities which are administratively consolidated under the heading and docket number of *In re Federal Mogul* (Tab "4" omits unrelated pages dealing with numerous other affiliated debtors).

**Tab 5**    *Ramon v. Mani,* 550 S.W.2d 270 (Tex. 1977)

**Tab 6**    *In re Dow Corning Corp.*, 113 F.3d 565 (6th Cir. 1997).

# *GARZA SERVICE LIST*

| DEFENSE COUNSEL | DEFENDANT | ADDRESS | PHONE NO. | FAX NO. |
|---|---|---|---|---|
| Lisa Powell | ABLE SUPPLY COMPANY | Jackson Walker, L.L.P. 1100 Louisiana, Suite 4200 Houston, Texas 77002 | 713-752-4200 | 713-452-4221 |
| Ken Rhodes | AC&S, INC. | Dunn Kacal Adams Pappas Law 2929 Allen Parkway, Suite 2600 Houston, TX 77019-2151 | 713-529-3992 | 713-980-9153 |
| Clay M. White | AQUA CHEM, INC. (D/B/A CLEAVER-BROOKS DIVISION) | Sammons & Parker, A Professional Corporation 218 North College Tyler, Texas 75702 | 903-595-4541 | 903-595-3766 |
| Lewis Miltenberger | A.P. GREEN INDUSTRIES (F/K/A A.P. GREEN REFRACTORIES COMPANY, A SUBSIDIARY OF U.S. GYPSUM COMPANY) | Cordray, Goodrich & Miltenberger One Century Plaza 108 W. Eighth St., Ste. 500 Fort Worth, TX 76102 | 817-820-0343 | 817-820-0373 |
| Phillip Brown | BROWN & ROOT, INC. (INDIVIDUALLY AND AS SUCCESSOR TO BROWN & ROOT USA,INC.) | Wilson, Elser, Moskowitz, Edelman & Dicker 5000 Renaissance Tower 1201 Elm Street Dallas, Texas 75270 | 214-698-8000 | 214-698-1101 |
| Mary Lou Mauro | COMBUSTION ENGINEERGING, INC. | Galloway, Johnson, Tompkins & Burr 3555 Timmons, Suite 1225 Houston, Texas 77027 | 713-599-0700 | 713-355-7600 |
| Frank G. Harmon | CROWN CORK & SEAL (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO MUNDET CORK COMPANY( | Crain Caton & James 3300 Two Houston Center 909 Fannin, 33rd Floor Houston, Texas 77010 | 713-658-2323 | 713-752-8618 |
| Sharla Frost | DANA CORPORATION | Powers & Frost 2600 Two Houston Center Houston, Texas 77010 | 713-767-1555 | 713-767-1799 |
| James Harris | THE FLINTOKE COMPANY | Harris, Lively & Duesler 550 Fannin Street, Suite 650 P.O. Box 830 Beaumont, Texas 77704-0830 | 409-832-8382 | 409-833-4240 |
| James M. Riley | FOSTER WHEELER ENERGY CORPORATION | Coats, Rose, Yale, Ryman & Lee, PC 800 First City Tower 1001 Fannin Houston, Texas 77002 | 713-651-0111 | 713-651-0220 |
| Eduardo Rodriguez Mitchell C. Chaney Teri L. Danish | GARLOCK INC. | Rodriguez, Colvin & Chaney, L.L.P 1201 E. Van Buren | 956-542-7441 | 956-541-2170 |

| DEFENSE COUNSEL | DEFENDANT | ADDRESS | PHONE NO. | FAX NO. |
|---|---|---|---|---|
| | | P.O. Box 2155<br>Brownsville, Texas 78522 | | |
| Kyle Steele | GASKET HOLDING INC. (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO FLEXITALLIC GASKET COMPANY) | Forman Perry Watkins Krutz & Tardy, PLLC<br>400 Woodview Tower<br>1349 Empire Central<br>Dallas, Texas 75427 | 214-905-2924 | 214-905-3976 |
| Mel Bailey | GEORGIA-PACIFIC CORPORATION (INDIVIDUALLY AND AS SUCCESSOR-IN-INTERST TO BESTWALL GYPSUM COMPANY) | Dehay & Elliston<br>NationsBank Plaza<br>901 Main Street, Suite 3500<br>Dallas, Texas 75202 | 214-210-2400 | 214-749-5620 |
| Frank Poff | GENERAL REFRACTORIES COMPANY | Crisp, Jordan & Boyd, L.L.P.<br>2301 Moores Lane<br>P.O. Box 6297<br>Texarkana, Texas 75505-6297 | 903-838-6123 | 903-832-8489 |
| Lewis Miltenberger | HARBISON-WALKER REFRACTORIES (FORMERLY A DIVISION OF INDRESCO INC.) | Cordray, Goodrich & Miltenberger<br>One Century Plaza<br>108 W. Eighth St., Ste. 500<br>Fort Worth, TX 76102 | 817-820-0343 | 817-820-0373 |
| Laura Frase | INGERSOL-RAND COMPANY | Forman Perry Watkins Krutz & Tardy, PLLC<br>400 Woodview Tower<br>1349 Empire Central<br>Dallas, Texas 75427 | 214-905-2924 | 214-905-3976 |
| Wade Whilden | KAISER ALUMINUN & CHEMICAL CORPORATION | Hicks, Thomas & Lilienstern<br>700 Louisiana, Suite 1700<br>Houston, Texas 77002 | 713-547-9100 | 713-547-9150 |
| Todd Wade | KELLY MOORE PAINT COMPANY | Brown McCarroll, L.L.P.<br>111 Congress Avenue<br>Suite 1400<br>Austin, TX 78701-4043 | 512-472-5456 | 512-479-1155 |
| John Hall | METROPOLITAN LIFE INSURANCE COMPANY | Locke, Liddell<br>600 Travis St., Suite 3400<br>Houston, Texas 77002-3095 | 713-226-1200 | 713-223-3717 |
| David Taylor | MINNESOTA MINING & MANUFACTURING COMPANY "3M" | Thompson, Coe, Cousins, & Irons L.L.P.<br>200 Crescent Court, 11th Floor<br>Dallas, Texas 75201-1853 | 214-871-8200 | 214-871-8209 |
| D. Ferguson McNeil | NORTH AMERICAN REFRACTORIES COMPANY | Vinson & Elkins<br>2300 First City Tower<br>1001 Fannin<br>Houston, Texas 77002-6760 | 713-758-3882<br>713-758-2222 | 713-615-5493 |
| Gail Jenkins | PROKO INDUSTRIES, INC. | Jenkins, Grove & Martin<br>2615 Calder Street, Suite 500<br>P.O. Box 26008<br>Beaumont, Texas 77720 | 409-832-4100 | 409-832-4242 |

| DEFENSE COUNSEL | DEFENDANT | ADDRESS | PHONE NO. | FAX NO. |
|---|---|---|---|---|
| Gary Elliston | RILEY STOKER | Dehay & Elliston<br>NationsBank Plaza<br>901 Main Street, Suite 3500<br>Dallas, Texas 75202 | 214-210-2400 | 214-210-2500 |
| Gary Elliston | SYNKOLOID (A DIVISION OF MURALO CO.) | Dehay & Elliston<br>NationsBank Plaza<br>901 Main Street, Suite 3500<br>Dallas, Texas 75202 | 214-210-2400 | 214-210-2500 |
| Micheal Walzel | TRIPLEX INC. | Stevens, Baldo & Freeman<br>P.O. Box 4950<br>Beaumont, Texas 77704 | 409-835-5200 | 409-838-5638 |
| James Powers | UNION CARBIDE CORPORATION | Powers & Frost<br>2600 Two Houston Center<br>Houston, Texas 77010 | 713-767-1555 | 713-767-1799 |
| William Arnold | UNIROYAL HOLDING, INC. (SUED INDIVIDUALLY AND AS SUCCESSOR-IN-INTERST TO U.S. RUBBER COMPANY) | Forman Perry Watkins Krutz & Tardy, PLLC<br>400 Woodview Tower<br>1349 Empire Central<br>Dallas, Texas 75427 | 214-905-2924 | 214-905-3976 |