United States District Court
Southern District of Texas
FILED

MAR 0 5 2002

Michael N. Milby
Clerk of Court

3S

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| *IN RE:* | § | CASE NO. 01-10578 |
| | § | Chapter 11 |
| FEDERAL-MOGUL GLOBAL, INC., | § | (Pending in the United States |
| | § | Bankruptcy Court for the |
| DEBTOR | § | District of Delaware) |

-------------------------------------------------------------------------------------

| | | |
|---|---|---|
| Adan Garza, et al., | § | |
| PLAINTIFFS, | § | C.A. B-01-179 |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| Able Supply Co, et al. | § | |
| DEFENDANTS, | § | |

**MOTION OF GARLOCK INC FOR STAY PURSUANT TO FEDERAL
RULE OF APPELLATE PROCEDURE 8(a)(1) PENDING APPEAL [1]
ACCOMPANIED BY A REQUEST FOR EXPEDITED CONSIDERATION**

Garlock Inc ("Garlock") files this Motion for Stay Pending Appeal Pursuant to Federal
Rule of Appellate Procedure 8(a)(1)(the "Motion"), and in support thereof, respectfully
represents as follows:

## I.
## BACKGROUND:

1.      On October 1, 2001 (the "Petition Date"), Federal-Mogul Global Inc. and 156 of
its affiliated companies, including a co-defendant in this civil action, filed voluntary petitions for
relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et. seq.* (the "Bankruptcy
Code") in the United States Bankruptcy Court for the District of Delaware.

---

[1]

    In the event the only remedy available to Garlock Inc is mandamus, Garlock Inc does not waive such relief
and urges the Appellate Court to consider this motion for stay also as a motion for mandamus relief.

2.     All 156 Chapter 11 proceedings are being jointly administered by the Honorable Sue Robinson in the United States District Court for the District of Delaware (herein the "Home" District Court) under bankruptcy case number 01-10578. The principal liabilities of this Debtor arise from personal injury, tort or wrongful death claims related to asbestos.

3.     Shortly after the Petition Date, on October 19, 2001, the defendant, Garlock Inc removed the above captioned personal injury tort civil action from the State District Court of Cameron County, Texas to the United States District Court for the Southern District of Texas, Brownsville Division pursuant to 28 U.S.C. §1334 as being related to the bankruptcy of the Debtor. Because no rules implement 28 U.S.C. § 157(b)(5), 28 U.S.C. § 1452 requires removal to the District and Division in which the civil action was pending. Garlock at all times recited 28 U.S.C. §§ 1334 and 157(b)(5) as a basis for this Court's "related-to" jurisdiction. This Court properly had subject matter jurisdiction over the Removed Case at the time of removal, a matter which Garlock urged in each of its removal pleadings.[2]

4.     On October 19, 2001, Garlock also filed a Motion to Transfer this civil action pursuant to §157(b)(5) to the Home District Court of Delaware where the Debtor's bankruptcy proceeding is pending in compliance with the jurisdictional mandate of § 157(b)(5) that the Home District Court decide the proper venue for the resolution of this "personal injury" civil action.

5.     Without hearing, this Honorable Court entered on February 22, 2002, (herein the "Order"), the District Court Order:

(a)     granting the Plaintiffs' Motion to Sever Claims Against the Bankrupt Defendant, finding that all claims between the non-debtors, Plaintiffs and solvent Defendants had no relation and would not effect the efficient administration of the bankruptcy estate; and

---

2

     Plaintiffs asserted that the District Court lacked subject matter jurisdiction at the time of removal. Garlock has established not only that Plaintiffs cite no cases supporting their position that subject matter jurisdiction did not exist, but substantial Fifth Circuit authority establishes without doubt that subject matter jurisdiction existed.

(b)     remanding *all* non-severed claims  and parties back to the State Court.
The Court did not order severance of the Debtor's cross-claims against the co-Defendants. The
following express Order was made:

> "Accordingly, the Court SEVERS all claims against the Debtor, including claims
> by Garlock and any other Defendants who may have claims against the Debtor."

> . . .

> "The remaing claims are therefore REMANDED to the Judicial District court,
> Cameron County, Texas from which they were removed."

## II.

## JURISDICTION OF THIS MOTION

6.     This Court has jurisdiction over this matter pursuant to F.R.A.P. 8(a)(1) and Rule
62, Fed. R. Civ. Proc.   The related appeal is governed by 28 U.S.C. §§ 1291 and 1292(a),(e).

## III.

## STAY RELIEF SOUGHT

7.     By this Motion, Garlock seeks entry of an order pursuant to F.R.A.P. 8(a) staying
the February 22, 2002, Order of the District Court (the "Order") and staying the District Court's
certification of its order of remand to the State Court beyond any time provided by Rule 62, Fed.
R. Civ. Proc. Garlock respectfully suggests that a stay is urged in this matter because the Fifth
Circuit on March 4, 2002, issued stays with respect to sister asbestos cases in the Houston
Division of the Southern District of Texas, which, like these before this Court, Garlock had also
moved to remove to the bankruptcy court.  See Exhibit 1, attached hereto and incorporated
herein by reference.  The Fifth Circuit is currently considering a motion for rehearing of its

recent order issued in Arnold v. Garlock, 278 F.3d 426 (5th Cir. 2001) (order on motion for stay). Garlock requests this Court to take judicial notice of the orders issued by the 5th Circuit that stay orders of remand with respect to parallel litigation pending in the Houston Division.

## IV.
## ARGUMENTS AND AUTHORITIES

### A.    THE DISTRICT COURT'S ORDER IS SUBJECT TO IMMEDIATE APPEAL

8.    The immediate appeal of the underlying District Court Order transferring only part of this civil action is proper under 28 U.S.C. §1291. The District Court's Order and partial denial of the §157(b)(5) motion to transfer is immediately appealable. *In re Dow Corning Corp.*, 86 F.3d 482, 487 (6th Cir.1996); *See, also In re Pan Am Corp.*, 16 F.3d 513, (2nd Cir. 1994); *In re Dow Corning Corp.,* 113 F.3d 565, (6th Cir. 1997).

9.    In a similar situation on appeal, the Supreme Court distinguished an Order of dismissal and a subsequent order of remand and held that "in logic and in fact the decree of dismissal preceded that of remand and was made by the district court while it had control of the cause. Indisputably, this Order is the subject of an appeal; and, if not reversed or set aside, is conclusive upon the petitioner." *City of Waco v. United States Fidelity & Guaranty Co.,* 293 U.S. 140, 143, 55 S.Ct. 6, 7, 79 L.Ed. 244 (1934). Consequently, the District Court's Order of dismissal is reviewable. *In re Adams*, 809 F.2d 1187, 1189 (5th Cir. 1987).

10.    Further, the Order is appealable under the collateral order doctrine of *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See, Dow Corning,* 86 F.3d at 488; *In re Pan Am Corp* 16 F.3d 513, (2nd Cir., 1994). *Cohen* holds that it is not always necessary that a judgment terminate an action before an appeal may be brought, and permits appellate review of decisions which "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole

case is adjudicated." *Id.* at 546, 69 S.Ct. at 1225-26. "A collateral order is reviewable under *Cohen* when it: (1) conclusively determines the disputed question; (2) resolves an important question completely separate from the merits of the action; and (3) is effectively un-reviewable on appeal from final judgment." *Dow Corning*, 86 F.3d at 488 (citing *Pacor, Inc. v. Higgins,* 743 F.2d 984, 988 (3d Cir.1984) (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457-58, 57 L.Ed.2d 351 (1978)); *See, also In re Pan Am Corp.,* 16 F.3d 513, (2nd Cir. 1994). Each element exists in this case.

11. If the District Court's Order is not immediately appealable as a final order under 28 U.S.C. §1291, the conditions for appeal under the collateral order doctrine have been met:

(a) The District Court's Order conclusively determined that claims pending against the non-debtor defendants were not so "related to" the Debtor's bankruptcy proceeding for purposes of §1334(b).

(b) Resolution of the §157(b)(5) venue question does not involve consideration of the merits of the pending personal injury tort claims.

(c) The unique circumstances of this case necessitate appellate review. Irreparable harm will inevitably result if the Appellate Court is prevented from addressing the issues presented by this appeal. The issues appealed will be rendered moot after a final judgment is rendered by the impact of remand alone).[3] For these reasons, appellate jurisdiction exists.

## B.   THE LEGAL STANDARD FOR GRANTING A STAY PENDING APPEAL:

---

[3]

In the instant case, the District Court's Order of severance and partial transfer logically preceded the subsequent Order of remand and was issued while the District Court had control of the Civil Action; therefore, the Order severing the Debtor from the action and transferring only part of the action to the District of Delaware is reviewable. However, once the court certifies its Order to the state court, Garlock will be irreparably harmed because federal jurisdiction is irrevocably lost and the appeal of the partial denial of transfer will be rendered moot. Garlock will effectively lose its right to appeal if the stay is not granted because the appeal will be moot unless a stay of the certification of the remand Order to the state court is issued. These facts come within the clear appellate authority to issue such stay.

5

12.     A stay as a matter of right is provided in Rule 62(a).  Both Rule 62(d) and BRP 7062 are not limited in application to money judgments.  *See*, 7 *Moore's Federal Practice and Procedure* , ¶¶ 62.06 at 62-36 (2nd ed. 1992).  *Becker v. United States*, 451 U.S. 1306, 101 S. Ct. 3161 (1981).  In *Newhall v. Offshore Logistice International*, 803 F.2d 821 (5th Cir. 1986) the Fifth Circuit implicitly held that a stay as of matter of right could have been obtained in connection with an appeal of an order dismissing a personal injury action on the grounds of *forum non conveniens.  Id.* at 827.[4]

13.     A discretionary stay is likewise available to Garlock.  The Fifth Circuit follows a four prong test for evaluating discretionary stays pending appeal.  Pursuant to this test, consideration is given to "(1) Whether the movant has made a showing of likelihood of success on the merits; (2) Whether the movant has made a showing of irreparable injury if the stay is not granted; (3) Whether the granting of the stay would substantially harm the other parties; and (4) Whether the granting of the stay would serve the public interest."  *In re First South Savings Assoc.*, 820 F.2d 700, 704 (5th Cir.1987); *Taylor Diving & Salvage Co., Inc. et al v. U.S. Dept. of Labor,* 537 F.2d 819, 821 n.8 (5th Cir.1976).  This test is particularly appropriate when the relief sought is injunctive.  *In re Gleasman,* 111 B.R. 595, 599 (Bankr.W.D.Texas 1990).

## C.     THESE DISCRETIONARY CRITERIA MUST BE "BALANCED" IN APPLICATION

14.     Although it is the rule that the party seeking a stay pending appeal must satisfy all four of these criteria in order for a stay to be issued [*Enterprise Int'l, Inc. v. Corporation Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472 (5th Cir. 1985)], the Fifth Circuit does not apply these factors mechanically rather it advocates a balancing test.  *In re Arbitration Between the West of England Ship Owners Mutual Ins. Assoc. (Luxembourg) and American Marine Corp.,* 1992

---

4

    Stays as a matter of right are often  granted on an appeal of a non-money judgment;  *e.g.* for mortgage foreclosure and receivership [*See, U.S. vs. Mansion House Cntr. Redevelopment Co.,* 682 F. Supp. 446 (E.D. Mo. 1988). *J. Perez & CIA, Inc. v. US.* 578 F. Supp. 1318 (D.P.R. 1984, *aff'd on other grounds,* 747 F.2d 813 (1st Cir 1984); *See, also City of Shelbyville Ky. v. Glover,* 184 F. 234 (6th Cir 1910)].

WL 91969 *4 (E.D.La.1992)[*citing National Treasury Employees Union v. Von Raab*, 808 F.2d 1057, 1059 (5th Cir.1987)].

## D.    A STAY SHOULD ISSUE TO PREVENT MOOTNESS OF THIS APPEAL

15.    Avoiding mootness of an appeal is the single most important reason cited by Appellate Courts justifying the issuance of a stay. *Watson v. Butler*, 823 F.2d 842, 845 (5th Cir. 1987). Mootness of an appeal constitutes irreparable harm. *See, In re First South Sav. Asso.,* 820 F.2d 700, 709 n. 11 (5th Cir 1987);[5] *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir 1986); *Matter of Combined Metals Reduction Co.*, 557 F.2d 179 (9th Cir 1977); *In re Victory Constr. Co.*, 9 BR 570 (1981, Bankr.) *vacated*, 37 BR 222 (BAP) *later proceeding*, 42 BR 145; *Miami Center Ltd. Partnership v. Bank of N.Y.*, 838 F.2d 1547 (11th Cir 1988); *In re Charter Co.*, 81 B.R. 90 (M.D. Fla. 1987); *In re Quality Spice Corp.*, 107 B.R. 843 (D.N.J. 1989).

16.    The "injury to the appellant" criteria necessary to obtain a stay pending appeal is a showing of irreparable injury if the stay is not granted. Garlock notes that it is not appealing the remand Order. The Court granted the motion to transfer venue as to the claims against the bankruptcy Defendants, and severed the co-defendants actions against the Debtor and transferred only the severed co-defendants' cross claims to the Home District Court. All done without addressing the application of the automatic stay. It is the denial of Garlock's Motion to Transfer the *entire* proceeding to the District of Delaware that Garlock questions on appeal.

17.    Because there is generally no appellate review of remand orders issued under 28 U.S.C. §1452(b) and/or §1447(c),[6] even if the court issuing the remand order was in error[7], once

---

5

An irreparable harm argument based on possible mootness is bolstered by demonstrating that the contemplated or pending appeal is the only avenue for relief. *In re First South Savings Association* is illustrative on this point. On appeal to the Fifth Circuit, the court held unless a stay was granted, the super-priority position of the new creditor could not be modified or reversed on appeal if the loan was made in good faith "due to the express provisions of the Bankruptcy Code," namely, section 364(e). [*Id,* 820 F.2d at 704-05]. After concluding that there was no other avenue for relief and that the other parties would not be harmed by the stay, the court issued a "limited mandamus" to the district court to enter a stay and hold a prompt hearing on the merits of the appeal.

6

the court issuing the order mails a certified copy of the order to the clerk of the state court, the jurisdiction of the federal courts over that case is terminated *and this appeal will be mooted.* ***Browning v. Navarro,*** 743 F.2d 1069, 1078 (5th Cir. 1984) (*citing **Bucy v. Nevada Constr. Co.,*** 125 F.2d 213 (9th Cir.1942)(district court could review and set aside its own erroneous remand order before filing of certified copy of order in state court *because remand order is not self-executing). See, also **Artukovic v. Rison,*** 784 F.2d 1354, 1356 (9th Cir.1986). An appeal would be then be moot and Garlock would have no other remedy.

### E.  SUCCESS ON THE MERITS - AT LEAST A COLORABLE APPEAL HAS BEEN ESTABLISHED BY GARLOCK

18.    With regard to the first criteria, the likelihood of success on the merits, the Fifth Circuit has recognized that "the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *In re First South Sav. Assoc.,* 820 F.2d at 704 (quoting, ***Ruiz v. Estelle,*** 666 F.2d 854, 56 (5th Cir.1982). If the appellants' likelihood of prevailing on the merits is at least colorable, the first criteria is satisfied. *See, also, **Ruiz v. Estelle, 650 F.2d 555, 565 (5th Cir.1981),*** cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1982) [if a serious legal question is involved, the first prong requires a showing only of "a substantial case on the merits."]; ***Ignacio v. I.N.S.,*** 955 F.2d 295, (5th Cir., Feb 26, 1992). This is particularly applicable in this case where this District Court made a determination of first impression unaided by established Fifth Circuit authority. It is not necessary to show, or even suggest, that the District Court issue a stay because it must find a likely error, but  only a showing that a real,

---

See ***Sykes v. Texas Air Corp.,*** 834 F.2d 488, 492 (5 [th] Cir. 1987); *In re **Rayburn Enterprises, Inc.,*** 781 F.2d 501, 502-503 (5th Cir.1986); ***McCratic v. Bristol-Myers Squibb & Co.,*** 183 B.R. 113, 115-16 (N.D.Texas 1995).
7
***Browning v. Navarro,*** 743 F.2d 1069, 1077, 1078 (5th Cir. 1984).

disputed or contested issue of law is at stake is sufficient. Such a showing, coupled with irreparable harm necessitates a stay of all action pending appeal.

(i)     **Success On Appeal - Subject Matter Jurisdiction is Acknowledged At the Time of Removal**

19.     On the issue of "related to" jurisdiction, the District Court improperly ignored *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir. 1984) in which the Third Circuit held that whether a civil proceeding is "related" to a bankruptcy case is determined by assessing "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor,* 743 F.2d 984 at 994. This test is recognized in a series of Fifth Circuit cases. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir. 1987) [related matter jurisdiction exists if the action has "any conceivable effect" on the estate].[8] It is clear, as shown below, that Removing Defendant's cross claims *could* have an affect on the debtor's estate in bankruptcy.

(ii)    **Manipulation of Parties After Removal Does Not Result in Loss of Jurisdiction - The Debtor Need Not Be A Party to Confer Subject Matter Jurisdiction**

20.     Two considerations are illustrated by *In re Canion*,196 F.3d 579 (5th Cir. 1999) establishing the error of the District Court's reasoning. First, the important rule overlooked by the District Court -- "related to" jurisdiction existed at the time that the underlying action was commenced. Subsequent events do not divest the federal court of subject matter jurisdiction. *Id. See, also, Freeport-McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428, 111 S.Ct. 858, 859, 112 L.Ed.2d 951 (1991); *See In re Celotex Corp.,*124 F.3d 619, 626 (4th Cir.1997) (Before applying the *Pacor* test, we note that if "related to jurisdiction" actually existed at the time of

---

8

 *See, also In Re Canion*, 196 F.3d 579 (5th Cir. 1999). Subject matter jurisdiction is expressly conferred on the District Court acting in its bankruptcy jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334, *et seq. See, also,* Reed, Sagar and Granoff, 56 *Am. Bankr. L. J. supra*, at 130; *In re Wood, supra.*

Rapid's removal of the contribution action to the district Court, Rapid's global settlement with the Celotex bankruptcy estate and the treatment of Owens' claim under the confirmed plan could not divest the district court of that subject matter jurisdiction.); *see, also* **Texas Beef Group v. Winfrey**, 201 F.3d 680, 686 (5th Cir. 2000).

21.    The debtor was not a party to the suit in **Canion**, yet the Fifth Circuit expressly found "related to" jurisdiction because the outcome of the suit could (not necessarily would) impact the estate. The facts are no different here, even as to the non-severed (remanded) portion of the case. Liquidation of the personal injury damages in state court will set the amount of the Debtor's liability for contribution because that amount may not be established in any other manner. Liquidation without the debtor is prejudicial to the debtor as a matter of law.[9] Additionally, claims for indemnification and contribution ". . . obviously would affect the size of the estate and the length of time the bankruptcy proceedings would be pending, as well as (the Debtor's) ability to resolve its liabilities and proceed with(in the) reorganization."[10] However, the District Court's Order, unless stayed, will prevent the "Home" District Court from ever making the review mandated by statute as to the "related to" jurisdiction that exists even in the remanded case.[11]

---

[9]
See also, **A.H. Robins Co. v. Piocc**, 788 F.2d 944, 1000-10001 (4th Cir.), cert. denied, 479 U.S. 876 (1986) (adverse judgment against party indemnified by Debtor would preclude Debtor from litigating merits of claim); *see also Kossman v. TJX Companies, Inc.*, 136 Bankr. Rptr. 640, 642 (W.D. Pa. 1991) (where debtor indemnification exists, a judgment for the plaintiff would have an effect on the bankruptcy estate, "as some part of the estate would be susceptible to being diverted to meet the indemnity obligation"); **Apex Investment Assocs., Inc. v. TJX Companies, Inc.**, 121 Bankr. Rptr. 522, 526-27 (N.D. Ill. 1990) (because of existence of debtor's indemnification, "[t]he resolution of this case will affect the arrangement of the creditors, and alter the debtor's rights and liabilities with respect to the claims against the estate"); **Philippe v. Shape, Inc.**, 103 Bankr. Rptr. 355, 358 (D. Me. 1989) (where indemnification exists, "a judgment in favor of the plaintiff . . . would automatically result in indemnification liability on the part of [the debtor]"); **In re Brentano's**, 27 Bankr. Rptr. 90, 91 -92 (Bankr. S.D. N.Y. 1983) (a judgment in favor of the plaintiff would automatically result in liability against the indemnitor-debtor).

[10]
See, **In re Dow Corning**, 183 F.3d 129 (6th Cir. 1996) .

[11]
Further , in a context substantially similar to this civil action, the Sixth Circuit in **Dow Corning** held that the contribution and indemnity claims between the debtor defendant and non-debtor codefendants were related to the

(iii)    **The District Court Order Preempts The Home Court's Jurisdiction to Make Venue Determinations of the Entire Removed Case**

22.    While Garlock believes it will succeed on the merits of its appeal, it has at the very least clearly has shown a colorable chance of succeeding on the merits:

a.    Pursuant to §157(b)(5), as a matter of law only the "Home" District Court has the authority to determine the venue of the removed personal injury tort cases.

---

debtor's bankruptcy and concluded that the entire action should be transferred to the "Home" District Court which would determine the venue and abstention issues. The Court concluded:

> Thousands of suits asserted against Dow Corning include claims against the nondebtors, and the nature of the claims asserted establishes that Dow Corning and the various nondebtor defendants are closely related with regard to the pending breast implant litigation. *Dow Chemical and Corning Incorporated have already asserted cross-claims against each other and Dow Corning in the underlying litigation,* and the other nondebtor defendants have asserted repeatedly throughout their briefs, motions, and oral arguments that they intend to file claims for contribution and indemnification against Dow Corning. . . ."

> We find that it is not necessary for the appellees first to prevail on their claims against the nondebtor defendants, and for those companies to establish joint and several liability on Dow Corning's part, before the civil actions pending against the nondebtors may be viewed as conceivably impacting Dow Corning's bankruptcy proceedings. *The claims currently pending against the nondebtors give rise to contingent claims against Dow Corning which unquestionably could ripen into fixed claims.* The potential for Dow Corning's being held liable to the nondebtors in claims for contribution and indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy. Claims for indemnification and contribution, whether asserted against or by Dow Corning, obviously would affect the size of the estate and the length of time the bankruptcy proceedings will be pending, as well as Dow Corning's ability to resolve its liabilities and proceed with reorganization. In addition, we believe there is a qualitative difference between the single suit involved in Pacor and the overwhelming number of cases asserted against Dow Corning and the nondebtor defendants in this case. A single possible claim for indemnification or contribution simply does not represent the same kind of threat to a debtor's reorganization plan as that posed by the thousands of potential indemnification claims at issue here. ...

> We conclude that Section 1334(b) jurisdiction exists over the actions pending against Dow Chemical, Corning Incorporated, Minnesota Mining, Baxter, and Bristol-Myers Squibb that are the subject of the companies' Section 157(b)(5) motions.

*Dow Corning,* 86 F.3d at 493-94.

11

b.     Yet, by (i) entering its Order on February 22, 2002, (ii) *refusing to transfer the entire case* to the "Home" District Court, (iii) severing the civil action into essentially two separate civil actions, and (iv) transferring only part of the civil action to the District of Delaware (suggesting that the "Home" District Court could make the remaining §157(b)(5) determinations as to only the severed parties and issues), the District Court has usurped the exclusive jurisdiction of the District Court in Delaware to decide *all the §157(b)(5) issues* with regard to this removed civil action.  This "Home" District Court's statutory right is recognized as "supreme" in *Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824, 834 (5th Cir.1993).

23.     The impact of this preemption is no better illustrated than simply noting two aspects of controlling Fifth Circuit authority.

(a)     First, that the Home District Court cannot, as a result of this Court's Order and certification of the remand Order, ever re-construct the litigation or original parties.  *See, supra, Browning vs Navarro*.   Thus, even if the Fifth Circuit Court of Appeals agrees that this District Court's preemption was improper, if the remand portion of this Court's Order (wholly dependent upon denying the Motion to Transfer as filed) is not stayed,  Garlock is left without a remedy because its appeal is mooted.

(b)     Second, failing of the District Court's Order is likewise illustrated by the first and foremost remand element set out in *Browning v. Navarro*, 743 F.2d 1069, 1076 (5th Cir. 1984) -- *forum non conveniens*:   The illustration here is not that this evidentiary factor weighs heavily in favor of transfer to the Home District Court (because absolutely no evidence was presented that Nueces County is a convenient forum);[12] but that this *Browning* factor has an additional statutory element (applicable to this particular type of "personal injury" claim) which may *in fact* be determined only in the "Home" District Court, and for a reason.   The

---

12

Plaintiffs are not from Nueces County, all but possibly one of the more than 50 defendants are not from Nueces County, Texas;  no injury occurred in Nueces County, Texas;   no allegation or evidence that substantial discovery rulings, or discovery has occurred; the Removing Defendant is not from Nueces County, Texas, and the forum is neither central to the parties in this suit, or a significant location concerning any aspect of this case

considerations imposed under 28 U.S.C. § 157(b)(5) *must include an analysis on administration of the estate of the Debtor*. Thus, 28 U.S.C. § 157(b)(5) provides proof that may only be available to the Home District Court and which this non-Home District Court cannot do. In all other context except personal injury regarding bankruptcy removal and remand (or abstention) this District Court is sitting as an appellate Court, having a factual record arising from the Debtor's estate overseen and supervised by the sitting Bankruptcy Judge of the division and district. It is because 28 U.S.C. §157(b)(5) restricts personal injury matters to the "Home" District Court that this District Court now has an element of required §157(b)(5) proof (impact on the estate) with no evidence and no method to make a determination. Such determination is otherwise available only to, and in the personal acquaintance of, the "Home" District Court. This Court, acting not as an appellate Court and not as the "Home" District Court, can only speculate as to the impact of severance, remand, or abstention on the estate. The provisions of the bankruptcy code were specifically drafted and designed to prevent such a circumstance and handicap.[13]

24.     This District Court would certainly not condone some other District Court in another district deciding to consider a remand appeal *from this District Court's bankruptcy "unit"* (which is mandated by the rules to be only appealable to the District Court in the division and district the remand motion was filed) simply because a party to the remand motion wanted another District Court to handle the appeal. However, this District Court has determined that it will act as a "Home" District Court in the same circumstance, even to the extent of entering orders which could terminate all federal jurisdiction if carried out, without consulting the Home District Court.

---

[13]

  a.  Under implementation of 28 U.S.C. § 157(b)(5) the supervising District Court (in this case the Home District Court) has its unit operating directly under it in the same division and district (or as here, the Home District Court is handling the case directly); or

  b.  In all other circumstances, this District Court receives findings and recommendations as an appeal from the bankruptcy court, acting as its Court's unit in this District Court's district and division.

25.     Congressional Policy is clear that these personal injury claims, including co-defendant claims (whether or not involving the Debtor as a party) must be regulated by the Home District Court. Otherwise § 157(b)(5) is a rendered useless:

> "Finally, *the manifest purpose of (28 U.S.C.) section 157(b)(5) was 'to centralize the administration of the estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'* **A.H. Robbins**, 788 F.2d at 1011 (*quoting* 130 Cong.Rec. H7492 (June 29, 1984) (remarks of Congressman Kastenmeier), reprinted in 1984 U.S.Code Cong. & Admin.News at 579). . . . . *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 43-52 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6004-13; *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)." *In re Pan American Corp.*, 950 F.2d 839, 845 (2nd Cir. 1991). [Emphasis added.]

Garlock's Motion to Transfer is neither new in the law nor unique to mass tort cases, although "... [c]oncededly, section 157(b)(5) does not prescribe any procedure." *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994,1011 (4th Cir. 1986). Transfer of these removed cases properly places before the "Home" District Court all the parties, all the pleadings, and all the issues as they existed on the petition date *and the removal date* necessary for the § 157(b)(5) determination. Such action satisfies the policy considerations surrounding the enactment of § 157(b)(5) and assures that a reorganization is "centralized,"[14] "speedy,"[15] and "efficient"[16].

---

14

See, also, *In re Pan American Corp.* 950 F.2d 839, 845  (2nd Cir. 1991) [dealing with multiple personal injury claims removed from state court and transferred pursuant to § 157(b)(5)]; *In re U.S. Lines, Inc.*, 216 F.3d 228, (2nd Cir.(N.Y.), 2000).

15

*Katchen v. Landy*, 382, U.S. 323 (1966)]. *see also In re Commonwealth Oil Refining, Inc.*, 596 F.2d 1239, 1247 (5th Cir. 1979), cert. denied, 444 U.S. 1045 (1980).

16

*Matter of National Gypsum Co.*, 118 F.3d 1056 (5th Cir 1997); *In re Butcher*, 46 B.R. 109, 112 (Bankr.N.D.Ga., 1985) ("The most important factor is whether the transfer of the proceeding would promote the economic and efficient administration of the estate") *citing Matter of Commonwealth Oil Refining Co., Inc.*, 596 F.2d 1239 (5th Cir. 1979).

**(iv)   Severance of Cross-Claims is A Determination of Venue -- And Is Subject to the Scrutiny of the "Home" District Court's § 157(b)(15) analysis.**

26.    Clearly, severance and remand deprives the "Home" District Court of even the opportunity to review the removed case as it existed on the petition date of the bankruptcy proceeding, much less as it existed on the removal date when bankruptcy subject matter jurisdiction clearly existed. Severance and remand constitutes an unauthorized determination to decentralize the Chapter 11 process of competing claims by and against the Debtor and the Debtor's ability to deal with these competing claims by a non-Home District Court. Any such actions likewise violate the automatic stay [*See, infra* Arguments and Authorities] which, taken together with § 157(b)(5) as Congress intended, implements the clear congressional policy that a "Home" District Court is exclusively entitled to review all personal injury cases over which subject matter jurisdiction exists. This District Court has now preempted the "Home" District Court's ability to make such a determination.

27.    It is undisputed that the liquidation of contribution and indemnity claims pending *by and against* the Debtor will be directly impacted by any de-centralization (*See, supa* note 9 authorities):

(a)    The state court will proceed to liquidate the personal injury claim which is the basis of the severed contribution claims of co-defendants -- without the Debtor's participation.

(b)    The "Home" District Court has no "plaintiff" -- and must now fashion a method to deal with the liquidation of the contribution claims in its severed case with the Debtor likely being bound by the jury verdict in the state court from which it was removed as a party.

(c)    The co-defendants will likely be prevented from submitting to the state court jury the "contribution" liability of the Debtor -- and thus, will end up with a judgment amount which may or may not be the liquidation amount in the Delaware severed trial.

28.    Thus, not only does severance result in the trial of essentially two lawsuits involving the same alleged injury, but severance with transfer/remand of the two parts of the

litigation to two separate forums also (i) impairs the Debtor's ability to defend against the imposition of liability and, as a result, the Debtor's potential liability is in the hands of the arguments to be made by its former co-defendants; and (ii) multiplies the litigation which must occur arising out of the same common nucleus of operative facts.

29.     The strong expression of public policy interests of the "Home" District Court and of the Bankruptcy Court having an opportunity to make the § 157(b)(5) evaluation would be substantially defeated if part of the civil action is transferred to the District Court and part of the action, in which liability will be determined absent the Debtor's participation, is heard in another forum without the possibility of removal to the Home District Court.

(v)     **Severance of Contribution Claims is Improper Pursuant to Both State and Federal Law:**

30.     Severance is a strategy designed by Plaintiffs to concurrently give themselves two bites at the same apple - violating the one-satisfaction rule - and depriving Garlock and those similarly situated from pursuing valid, enforceable claims for contribution in one trial. Severance promotes multiplicity of litigation and increases the potential for inconsistent results. To the extent state law controls, the rule in Texas has long been that a personal injury plaintiff may not split his cause of action. *See, e.g., **Cormier v. Highway Trucking Company**,* 312 S.W.2d 406 (Tex. Civ. App. - San Antonio 1958, no writ) (plaintiff could not bring separate actions for personal injury and property damages arising out of same automobile accident). Under Texas law, in suits alleging negligence as a basis for recovery, the defendants' contribution claims must be brought in the primary suit. *See **Ryland Group, Inc. v. White**,* 723 S.W.2d 160, 162 (Tex. App. - Houston [1st Dist.] 1986, original mandamus proceeding). An order of severance removing claims for contribution between defendants from the primary action violates the defendants' rights to have liability determined in the primary suit. *Id.* at 163. *See also, e.g., **Texas Cities Gas Co. v. Dickens**,* 133 S.W.2d 810, 812-13 (Tex. Civ. App. - Waco 1939, no writ)(in personal injury case, trial court impermissibly severed contribution claims, including cross-action for contribution, from primary

suit); ***Pustejovsky v. Rapid-American Corporation***, 35 S.W.3d 643, 653 (Tex. 2000). *See also* ***Barr***

***v. Resolution Trust Corp.***, 837 S.W.2d 627, 630-31 (Tex. 1992)(holding that any claim that arising

out of the same operative facts should be litigated in the same lawsuit.). *See, also,* ***Gideon v. Johns-***

***Mansville Sales Corp.***, 761 F.2d 1129, 1136-37 (5th Cir. 1985); ***Graffagnino v. Fibreboard Corp***,

776 F.2d 1307, 1308 (5th Cir. 1985).

      31.     Not only will Garlock be irreparably harmed if a stay is not issued, but the

Debtor's freedom of action will also be irreparably harmed as a result of its severance from the

civil action and the denial of transferring the entire action to Delaware. Partial remand of the

civil action will forever preclude the Debtor's ability to withdraw the reference with regard to the

civil action or to later remove the action if it desires, *See* ***In re Biglari Import & Export, Inc.***,

142 B.R. 777, 785 (Bankr.W.D.Texas 1992).  Furthermore, severance of the Debtor from the

action will affect *the Debtor's cross-claims against the remaining defendants,* including Garlock

and will preclude the Debtor from participating in defending the civil action despite the fact that

it is subject to various cross-claims for indemnity and contribution if the remaining defendants

are held liable.

      **(vi)**     **The Severance Order Violates The Automatic Stay**:

      32.     Not only did the District Court's Order transferring only part of the action to the

District of Delaware preempt the Home District Court of Delaware from exercising its exclusive

jurisdiction to determine the venue of this proceeding, but the severance provisions of the

District Court's Order violated the automatic stay existing in the Debtor's bankruptcy.

      33.     The automatic stay prevents any third-party act to exercise control over "property

of the estate." 11 U.S.C. §362(a)(3).  By separating the cross-claims against the Debtor and

remaining defendants without the Debtor's consent, the District Court improperly exercised

control over the Debtor's cross-claims which remain property of the Debtor's estate.  The affect

of the District Court's Order was to leave the Debtor potentially liable to the remaining

defendants while simultaneously precluding the Debtor from participating in the underlying

litigation which may ultimately lead to its liability which affects the ability of the Debtor to prosecute its own cross-claims against the remaining defendants, because it will not have the benefit of participating in the evidentiary and testimonial presentations which may affect the ultimate amount of its liability to the other defendants. *See, e.g. Korn v. G.D. Searle & Co*., 81 B.R. 1 (D.N.H. 1987) [the automatic stay precludes severance of consolidated personal injury actions against an IUD manufacturers where severance could result in non-debtor manufacturer contending that debtor manufacturer was solely liable]."[17]

34.     Contribution claims against the debtor are subject to the automatic stay. *Dow Corning*, 86 F.3d at 495-97. *In re Baldwin-United Corp*., 48 B.R. 901, 903 (Bankr. S.D. Ohio, 1985) [cited in *Johns-Manville*[18] 837 F.2d 89 (2nd Cir.), *cert. denied*, 488 U.S. 868 (1988) with approval] recognizes that:

> "'the mere filing of a third-party suit for indemnity and contributions affects the assets of these Debtors, since such suits must inevitably add to the administrative costs of the estates with a concomitant decrease in proceeds available for distribution to creditors." *In re Johns-Manville Corp*., 57 B.R. 680, 689 (Bankr.S.D.N.Y. 1986) *citing In re Baldwin-United Corp.*, 48 B.R. 901, 903 (Bankr.S.D.Ohio 1985).

35.     If prosecution of a suit for contribution against a Debtor is stayed it is axiomatic that the deliberate taking of an action in a case (without lifting of the stay) which has a direct or indirect impact on the contribution claims pending *by or against* the Debtor would be covered by the automatic stay. *In Re Baldwin-United Corporation Litigation*, 765 F.2d 343 (2nd Cir. 1985) dealt with the application of the automatic stay and contribution claims against the Debtor

---

17

     See, also, *In re Dow Corning*, 183 F.3d 129 (6th Cir. 1996) .

18

     *Johns-Manville* cited the Fifth Circuit as authority to support its holding, quoting *In re All Media Properties, Inc*. 5 B.R. 126 (Bankr. S.D. Tex. 1980*), aff'd* 646 F.2d 193 (5th Cir. 1981):
"'claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrences or happening of an extrinsic event.'" *Id*. at 688.

which arose out of suits against broker-dealers who had sold annuities issued by Baldwin's insurance subsidiaries[19]:

> " . . . to whatever extent a conflict may arise between the authority of the Bankruptcy Court to administer this complex reorganization and  the authority of the District Court to administer consolidated pretrial proceedings, *the equities favor maintenance of the unfettered authority of the Bankruptcy Court.*
> . . . .
> *The possibility of conflicting decisions is far more serious in (a) complex Chapter 11 proceeding with its numerous indemnity claimants . . . ." **Id. Baldwin** at 348. [Emphasis added.]

This holding directly applies to this removed civil action in which the Debtor had pending *by and against it* claims for contribution and indemnification which as the Second Circuit noted, are subject to the automatic stay

36.     All of this points only to the fact that it is the Home District Court which is vested with the authority to determine how and where this case is to be tried, taking into account how its bankruptcy unit, administering the reorganization case, is impacted.

### F.   NO SUBSTANTIAL HARM TO THE PLAINTIFFS WILL OCCUR IF A STAY IS GRANTED

37.     The third discretionary stay criteria, a showing that the stay will not substantially harm the non-appealing parties, is also satisfied in this case.  The District Court's February 22,

---

19

       In ***Baldwin***, an MDL was created to include these claims (requiring only one complaint filed against each broker-dealer, and a single class by Paine-Webber).  Paine Webber in turn filed a proof of claim in the Baldwin Chapter 11 case for indemnity and contribution arising out of the MDL and other state court litigation, and then filed a third party complaint against Baldwin in the MDL proceeding.  Upon the Debtor's threat of seeking relief for the violation of stay made by the Debtor, Paine Webber obtained a TRO from the District Court supervising the MDL

> " . . . barring Baldwin from applying to the Bankruptcy Court in Ohio 'for declaratory or injunctive relief which wold purport to determine, affect or interfere, directly or indirectly with [the District] Court's jurisdiction over  the third-party complaint against Baldwin . . . .'" *Id*. at 346.

Paine-Webber argued that the claim for contribution was not subject to the automatic stay (arguing the application of *In Re Frenville*, 744 F.2d 332 (3rd Cir. 1984).

2002 Order effectively precludes the Debtor from participating in the defense of contribution demands in the state court as among all co-defendants (except the debtor) while leaving the Debtor potentially liable on contribution and indemnity claims when the state court personal injury suit is liquidated. Such an Order violates the automatic stay in the Debtor's bankruptcy by affecting property of the estate. Therefore, the non-appealing parties will suffer no harm from a stay of that Order since continuation of the underlying litigation pursuant to that Order, including all expenses and costs incurred and all progress made in the litigation, will continue to be stayed and ultimately will be for naught as in violation of the stay. Whether the Order is stayed or not, resolution of the issues on appeal is necessary before the non-appealing parties may proceed. Either the Fifth Circuit may decide that the District Court's Order is void as a violation of the stay or, at some point in the future, in connection with its bankruptcy case, the Debtor will attempt to resolve claims against it arising from this civil action and may assert that the Order violated the automatic stay by compromising its ability to participate and control the estate's liability and contribution rights.

38. Mere delay caused by an appeal is not substantial harm. *In re Victory Const. Co., Inc.*, 9 B.R. 570, 571 (Bankr.C.D.Cal. 1981); *In re Butler*, 242 B.R. 553, 554 (Bankr.S.D.Ga. 1999); *Harris v. Fort Oglethorpe State Bank*, 21 B.R. 1019, 1022 (E.D.Tenn., Jul 23, 1982).

39. Even if the District Court's Order did not violate the automatic stay, the non-appealing parties will suffer little harm as the appeals process in the Fifth Circuit is efficient and will impose little delay.

**G.  PUBLIC POLICY HAS BEEN ESTABLISHED BY CONGRESS --THE HOME COURT SHOULD HAVE THE EXCLUSIVE VENUE OPTIONS AIDED BY ITS CONNECTION TO THE BANKRUPTCY CASE, AND ITS PROXIMITY TO THE AUTOMATIC STAY JURISDICTION OF ITS UNIT**

40. The final requirement for granting a stay pending appeal is a showing that the public interest will be served by the issuance of the stay. A stay in this action will promote the

congressional public policy and interest in having all matters related to bankruptcy heard efficiently and expeditiously with the goal of conserving the debtor's resources and distributing the debtor's assets for the benefit of all creditors alike. [*See*, citations, *supra*]. The District Court's Order, as it now stands, encourages the haphazard litigation of claims against the estate and encourages a "race to the courthouse" by a few creditors at the expense of others. Section 157(b)(5), the use of which is substantially impaired by the District Court's Order, is the mechanism designed by Congress to ensure that matters relating to bankruptcy will, if appropriate, be heard in the manner proscribed by the "Home" District Court. The public interest in conserving judicial resources is best served by imposing a stay of the District Court's Order pending appeal.

## H.   A BOND IS NOT MANDATORY - AND GARLOCK IS FINANCIALLY SOLVENT

41.   With certain exceptions having no application in this case, under either the BRP 7062 or Rule 62, Fed R. Civ Proc., when an appeal is taken from a judgment or order, the appellant may obtain a stay *as a matter of right* by posting a bond or security. Neither an order refusing to transfer a case under § 157(b)(5) or an order remanding a case to state court falls within any exception set forth in either Rule 62, Fed R. Civ Proc., or BRP 7062 list of excluded orders[20] and the posting of a bond is not mandatory under either rule in order to obtain a stay.[21]

42.   The relevant factors to be considered in determination of whether, for a stay as a matter of right under Rule 62, Fed R. Civ Proc., a bond will be required, and if so, the amount of

---

20

The exceptions to Rule 7062 are notable. There is no automatic ten-day stay of orders granting relief from the automatic stay, orders granting or denying use of cash collateral or property of the estate, or an order authorizing the trustee to obtain credit.

21

*See, e.g.. Dillon v. City of Chicago*, 866 F.2d 902 (7th Cir 1988) (district court abused its discretion by requiring a financially solvent appellant to post a bond sufficient to cover a judgment of $162,000). Particularly as to remand orders, there is no money judgment.

the bond, include[22] (i) the financial condition of the judgment debtor; (this factor applies where there is an indication of lack of financial solvency, certainly not the situation for Garlock, Appellants herein); (ii) the likelihood and degree of harm to the judgment debtor if execution of the judgment is not stayed. (The factor weighs strongly in favor of a stay where no harm will occur in awaiting the duration of this appeal which may be expedited) (iii) the likelihood and degree of harm to the judgment creditor if execution of the judgment is stayed; (in this case there is no judgment creditor and no execution to be stayed); (iv) whether the judgment debtor will be less likely to able to satisfy the judgment after resolution of the appeal (again, there is no judgment creditor in this case, and no execution to be stayed); and (v) the availability of alternate means of security. *See, e.g. In re Calisoff*, 92 BR 357, 359 (Bankr. N.D. Ill 1988); *In re James Yao Gleasman*, 111 BR 545 (W.D. Tex. 1990).

43.   In a non-money judgment or order, the amount of the bond, if ordered, is only required to be sufficient to cover the unsatisfied judgment, costs on appeal, interest or damages for delay. *See, Mansion House*, 682 F. Supp. at 449-450.[23]  No bond should be required with respect to the stay as a matter of right of a non-monetary judgment, or with respect to any discretionary stay pending this appeal.   Alternatively, a bond should be required, if at all, in an amount sufficient to cover the costs of such appeal,[24] and the stay should be entered immediately and provide a reasonable time for the administrative process needed to obtain and post such a

---

[22]

   *In re Calisoff*, 92 BR 357, 359 (Bankr. N.D. Ill 1988); *In re James Yao Gleasman*, 111 BR 545 (W.D. Tex. 1990).

[23]

   In *Mansion*, the court did not require a bond, and noted that in a non-money judgment or order "the appropriate amount of the supersedeas bond . . . *would at most be a bond amount sufficient to cover the anticipated costs of the appeal.*" *Id.* at 450 (Emphasis Added).

[24]

   Thus, if a bond is found to be warranted, the amount of the bond, if required, should be sufficient to protect the appellee from the costs of an appeal (in non-money judgment appeals), and it is for the bankruptcy court to determine the amount and sufficiency of the bond. *In re Max Sugerman Funeral Home, Inc.* 94 BR 16, 17 (D. RI 1988 Bankr); *Farmer v. Crocker National Bank (In re Swift Aire Lines, Inc)*, 21 B.R. 12, 14 (Bankr. 9th Cir 1982).

bond. *See*, ***Capital Bancshares, Inc. v. North Am. Guaranty Ins. Co.***, 433 F.2d 279 (5th Cir. 1970).

## V.
## CONCLUSION

44.     Having satisfied the criteria for a stay as a matter of right and each part of the four part test required for the imposition of a discretionary stay pending appeal, Garlock requests that this Court stay the transfer of the severed portion of the civil action and stay certification of its Order to the State court pending appeal of that Order.

WHEREFORE, Garlock Inc respectfully requests that this Court enter an order in the form annexed hereto (i) imposing a stay pursuant to Federal Rule of Appellate Procedure 8(a)(1) pending a determination by the Fifth Circuit Court of Appeals of the issues on appeal and granting such other and further relief as is just and appropriate.

Respectfully submitted,

Mitchell C. Chaney
SB# 04107500
Fed ID #1918
Teri L. Danish
SB# 05375320
Fed. ID # 12862
***Rodriguez, Colvin & Chaney, LLP***
1201 East Van Buren
Brownsville, Texas 78522
Phone: (956) 542-7441; fax: (956) 541-2170
ATTORNEY IN CHARGE FOR GARLOCK INC

Shelby A. Jordan
State Bar No. 11016700
Admissions No. 2195
*Jordan, Hyden, Womble & Culbreth, P.C.*
500 N. Shoreline Dr., Suite 900
Corpus Christi, Texas 78471
Telephone:  (361) 884-5678
Telecopier:  (361) 884-5616

Of counsel:
*Pepper Hamilton LP*
Michael H. Reed
Anne Marie Schwab
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4016
Telecopier: (215) 981-4750
ATTORNEYS FOR GARLOCK INC

## **CERTIFICATE OF CONFERENCE**

Prior to filing this Motion, Leslie MacLean, one of the attorneys for the Plaintiffs was contacted and she indicated that the Plaintiff's WOULD oppose the relief sought herein. Accordingly, this is a contested motion.

Teri L. Danish

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of foregoing document was served by Federal Express on March  5th , 2002 on Charles Siegel, counsel for Plaintiffs and by First Class Mail on March  6th , 2002 on all counsel of record as listed on the attached service list.

Teri L. Danish

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| *IN RE:* | § | CASE NO. 01-10578 |
| | § | Chapter 11 |
| FEDERAL-MOGUL GLOBAL, INC., | § | (Pending in the United States |
| | § | Bankruptcy Court for the |
| DEBTOR | § | District of Delaware) |

---

| | | |
|---|---|---|
| Adan Garza, et al., | § | |
| PLAINTIFFS, | § | C.A. B-01-179 |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| Able Supply Co, et al. | § | |
| DEFENDANTS, | § | |

## ORDER GRANTING
## MOTION OF GARLOCK INC FOR STAY PURSUANT TO FEDERAL
## RULE OF APPELLATE PROCEDURE  8(a)(1) PENDING APPEAL

Upon the Motion of GARLOCK INC, a Defendant and Appellant herein, for Stay

Pursuant to Federal Rule of Appellate Procedure 8(a)(1) Pending Appeal, and the Court finding

that good cause exists for the relief requested by such Motion;  therefore, it is

ORDERED that GARLOCK'S Motion is granted in all things;  and it is further

ORDERED that a stay is imposed pursuant to Federal Rule of Appellate Procedure

8(a)(1) pending a determination by the Fifth Circuit Court of Appeals of the issues on appeal.

DATED: _____, 2002.

_____
UNITED STATES DISTRICT JUDGE

ORDER SUBMITTED BY:
Teri L. Danish
SB# 05375320
Fed. ID # 12862
***Rodriguez, Colvin & Chaney, LLP***
1201 East Van Buren
Brownsville, Texas 78522
Phone: (956) 542-7441; fax: (956) 541-2170
ATTORNEY IN CHARGE FOR GARLOCK INC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
# FILED

No. 02-20231

MAR 0 ᵏ 2002

CHARLES R. FULBRUGE III
CLERK

In Re: GARLOCK INC

Petitioner

---

Petition for Writ of Mandamus to the United States
District Court for the
Southern District of Texas, Houston

---

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

BY THE COURT:

IT IS ORDERED that the District Court's order of remand entered from the bench on February 8, 2002 is hereby stayed pending this Court's consideration of the motion for rehearing in Arnold v. Garlock, 278 F3 426 (5th Cir. 2001).

ROBERT M. PARKER
Circuit Judge

EXHIBIT

1

03/04/02   MO[...]                                             241  @009

# United States Court of Appeals

## FIFTH CIRCUIT
## OFFICE OF THE CLERK

CHARLES R. FULBRUGE III
CLERK

TEL. 504-310-7700
600 CAMP STREET
NEW ORLEANS, LA 70130

March 4, 2002

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 02-20232 In Re: Garlock Inc
USDC No. H-01-CV-3606

Enclosed is an order entered in this case.

Sincerely,

CHARLES R. FULBRUGE III, Clerk

By: _Amanda Maria Sutton_, Deputy Clerk

Mr Mark Douglas Haas
Mr Peter A Kraus
Mr Henry W Simon Jr
Mr Shelby A Jordan
Mr Michael N Milby, Clerk

MOT-2

03/04/02  MON 15:53  [TX/RX NO 6624]  ☒010

# IN THE UNITED STATES DISTRICT COURT

## FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
**FILED**

MAR 04 2002

CHARLES R. FULBRUGE III
CLERK

No. 02-20232

In Re: GARLOCK INC

Petitioner

Petition for Writ of Mandamus to the United States
District Court for the
Southern District of Texas, Houston

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

BY THE COURT:

IT IS ORDERED that the District Court's order of remand entered from the bench

on February 8, 2002 is hereby stayed pending this Court's consideration of the motion

for rehearing in Arnold v. Garlock, 278 F3 426 (5th Cir. 2001).

ROBERT M. PARKER
Circuit Judge

# United States Court of Appeals

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

CHARLES R. FULBRUGE III
CLERK

TEL. 504-310-7700
600 CAMP STREET
NEW ORLEANS, LA 70130

March 4, 2002

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 02-20228 In Re: Garlock Inc
USDC No.   H-01-CV-3604

Enclosed is an order entered in this case.

Sincerely,

CHARLES R. FULBRUGE III, Clerk

By: _____
Amanda Maria Sutton, Deputy Clerk

Mr Shelby A Jordan
Mr Mark Douglas Haas
Mr Peter A Kraus
Mr Charles S Siegel
Mr Henry W Simon Jr
Mr Michael N Milby, Clerk

MOT-2

# IN THE UNITED STATES DISTRICT COURT

## FOR THE FIFTH CIRCUIT

No. 02-20228

U.S. COURT OF APPEALS
**FILED**

MAR 0 4 2002

CHARLES R. FULBRUGE III
CLERK

In Re: GARLOCK INC

       Petitioner

---

Petition for Writ of Mandamus to the United States
District Court for the
Southern District of Texas, Houston

---

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

BY THE COURT:

    IT IS ORDERED that the District Court's order of remand entered from the bench on February 8, 2002 is hereby stayed pending this Court's consideration of the motion for rehearing in Arnold v. Garlock, 278 F3 426 (5th Cir. 2001).

_Robert M. Parker_

ROBERT M. PARKER
Circuit Judge

# United States Court of Appeals

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

CHARLES R. FULBRUGE III
CLERK

TEL. 504-310-7700
600 CAMP STREET
NEW ORLEANS, LA 70130

March 4, 2002

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 02-20229  In Re: Garlock
USDC No.  H-01-CV-3602

Enclosed is an order entered in this case.

Sincerely,

CHARLES R. FULBRUGE III, Clerk

By: _Amanda M Sutton_
Amanda Maria Sutton, Deputy Clerk

Mr Shelby A Jordan
Ms Melissa K Ferrell
Mr Michael H Reed
Mr Peter A Kraus
Mr Henry W Simon Jr
Mr Michael N Milby, Clerk

MOT-2

# IN THE UNITED STATES DISTRICT COURT

## FOR THE FIFTH CIRCUIT

No. 02-20229

U.S. COURT OF APPEALS
**FILED**

MAR 0 4 2002

CHARLES R. FULBRUGE III
CLERK

In Re: GARLOCK INC

　　　　　Petitioner

---

Petition for Writ of Mandamus to the United States
District Court for the
Southern District of Texas, Houston

---

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

BY THE COURT:

　　　　IT IS ORDERED that the District Court's order of remand entered from the bench on February 8, 2002 is hereby stayed pending this Court's consideration of the motion for rehearing in Arnold v. Garlock, 278 F3 426 (5th Cir. 2001).

ROBERT M. PARKER
Circuit Judge

# U.ited States Court of Appea

**FIFTH CIRCUIT**
**OFFICE OF THE CLERK**

CHARLES R. FULBRUGE III
CLERK

TEL. 504-310-7700
600 CAMP STREET
NEW ORLEANS, LA 70130

March 4, 2002

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 02-20230 In Re: Garlock Inc
USDC No. H-01-CV-3605

Enclosed is an order entered in this case.

Sincerely,

CHARLES R. FULBRUGE III, Clerk

By: Amanda M Sutton
Amanda Maria Sutton, Deputy Clerk

Mr Mark Douglas Haas
Mr Peter A Kraus
Mr Charles S Siegel
Mr Henry W Simon Jr
Mr Shelby A Jordan
Ms Melissa K Ferrell
Mr Michael N Milby, Clerk

MOT-2

IN THE UNITED STATES DISTRICT COURT

FOR THE FIFTH CIRCUIT

No. 02-20230

U. S. COURT OF APPEALS
**FILED**

MAR 04 2002

CHARLES R. FULBRUGE III
CLERK

In Re: GARLOCK INC

Petitioner

Petition for Writ of Mandamus to the United States
District Court for the
Southern District of Texas, Houston

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

BY THE COURT:

IT IS ORDERED that the District Court's order of remand entered from the bench

on February 8, 2002 is hereby stayed pending this Court's consideration of the motion

for rehearing in Arnold v. Garlock, 278 F3 426 (5th Cir. 2001).

ROBERT M. PARKER
Circuit Judge

# *United States Court of Appeals*

### FIFTH CIRCUIT
### OFFICE OF THE CLERK

CHARLES R. FULBRUGE III
    CLERK

TEL. 504-310-7700
600 CAMP STREET
NEW ORLEANS, LA 70130

March 4, 2002

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

No. 02-20231 In Re: Garlock Inc
    USDC No.  H-01-CV-3603

Enclosed is an order entered in this case.


Sincerely,

CHARLES R. FULBRUGE III, Clerk

By: _____
    Amanda Maria Sutton, Deputy Clerk


Mr Shelby A Jordan
Mr Mark Douglas Haas
Mr Peter A Kraus
Mr Charles S Siegel
Mr Henry W Simon Jr
Mr Michael N Milby, Clerk (Houston)

MOT-2